**No.**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

In re Speaker of the House Ben Toma and Senate President Warren Petersen.

---

SPEAKER OF THE HOUSE BEN TOMA, in his official capacity and
SENATE PRESIDENT WARREN PETERSEN, in his official capacity,
*Intervenor-Defendants-Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA,
*Respondent,*

MI FAMILIA VOTA, VOTO LATINO, LIVING UNITED FOR CHANGE IN
ARIZONA,  LEAGUE OF UNITED LATIN AMERICAN CITIZENS ARIZONA,
ARIZONA STUDENTS' ASSOCIATION, ADRC ACTION, INTER TRIBAL
COUNCIL OF ARIZONA INCORPORATED, SAN CARLOS APACHE TRIBE,
ARIZONA COALITION FOR CHANGE, UNITED STATES OF AMERICA,
PODER LATINX, CHICANOS POR LA CAUSA, CHICANOS POR LA CAUSA
ACTION FUND, DEMOCRATIC NATIONAL COMMITTEE, ARIZONA
DEMOCRATIC PARTY, ARIZONA ASIAN AMERICAN NATIVE
HAWAIIAN AND PACIFIC ISLANDER FOR EQUITY COALITION,
PROMISE ARIZONA, SOUTHWEST VOTER REGISTRATION EDUCATION
PROJECT, TOHONO O'ODHAM NATION, GILA RIVER INDIAN
COMMUNITY, KEANU STEVENS, ALANNA SIQUIEROS, LADONNA
JACKET, ADRIAN FONTES, IN HIS OFFICIAL CAPACITY AS ARIZONA
SECRETARY OF STATE, LARRY NOBLE, APACHE COUNTY RECORDER,
IN HIS OFFICIAL CAPACITY, DAVID W. STEVENS, COCHISE COUNTY
RECORDER, IN HIS OFFICIAL CAPACITY, PATTY HANSEN, COCONINO
COUNTY RECORDER, IN HER OFFICIAL CAPACITY, SADIE JO
BINGHAM, GILA COUNTY RECORDER, IN HER OFFICIAL CAPACITY,
SHARIE MILHEIRO, GREENLEE COUNTY RECORDER, IN HER OFFICIAL
CAPACITY, RICHARD GARCIA, LA PAZ COUNTY RECORDER, IN HIS

OFFICIAL CAPACITY, STEPHEN RICHER, MARICOPA COUNTY RECORDER, IN HIS OFFICIAL CAPACITY, KRISTI BLAIR, MOHAVE COUNTY RECORDER, IN HER OFFICIAL CAPACITY, MICHAEL SAMPLE, NAVAJO COUNTY RECORDER, IN HIS OFFICIAL CAPACITY, GABRIELLA CAZARES-KELLY, PIMA COUNTY RECORDER, IN HER OFFICIAL CAPACITY, SUZANNA SAINZ, SANTA CRUZ COUNTY RECORDER, IN HER OFFICIAL CAPACITY, RICHARD COLWELL, YUMA COUNTY RECORDER, IN HIS OFFICIAL CAPACITY, MICHELLE BURCHILL, YAVAPAI COUNTY RECORDER, IN HER OFFICIAL CAPACITY, DANA LEWIS, KRIS MAYES, IN HER OFFICIAL CAPACITY AS ARIZONA ATTORNEY GENERAL, POLLY MERRIMAN, GRAHAM COUNTY RECORDER, IN HER OFFICIAL CAPACITY, STATE OF ARIZONA, JENNIFER TOTH, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE ARIZONA DEPARTMENT OF TRANSPORTATION,

*Real Parties in Interest*.

On Petition for a Writ of Mandamus to the United States District Court, District of Arizona-Phoenix
Case No. 2:22-CV-00509-SRB

**PETITION FOR WRIT OF MANDAMUS**

Kevin E. O'Malley (Bar No. 006420)
Hannah H. Porter (Bar No. 029842)
Mark C. Dangerfield (Bar No. 010832)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000
kevin.omalley@gknet.com
hannah.porter@gknet.com
mark.dangerfield@gknet.com
*Counsel for Petitioners*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ISSUES PRESENTED ................................................................................. 2

STATEMENT OF THE CASE ...................................................................... 3

I.  This Issue Is Properly Reviewed By Mandamus ............................................ 7

   A.  Petitioners Have No Other Adequate Means Of Relief And, Absent Mandamus, Will Be Prejudiced In A Way Not Correctable By Appeal. ........... 8

   B.  For at least two reasons, the District Court's order was clearly wrong as a matter of law. ...................................................................................... 10

      1.  The Legislators Didn't Waive The Legislative Privilege By Intervening In The Lawsuit And Denying Plaintiffs' Claims About The Legislature's Intent. ........................................................................................ 11

      2.  Toma And Petersen's Intent In Approving The Voting Laws Is Completely Irrelevant To This Case ............................................................ 17

   C.  The district court's order raises an important issue of first impression ..... 22

II.  The Court Should Issue An Emergency Stay Of The District Court's Discovery Order Until This Petition Has Been Resolved. ................................... 23

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Associations, Inc. v. Alviti*,
14 F.4th 76 (1st Cir. 2021)................................................................10

*Austin v. Berryman*,
768 F. Supp. 188 (W.D. Va. 1991)....................................................18

*Bauman v. United States District Court*,
557 F.2d 650 (9th Cir. 1977) ..................................................8, 10, 22

*Berger v. N. Carolina State Conf. of the NAACP*,
142 S. Ct. 2191 (2022)...............................................................5, 13

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) .............................................................16

*City of Las Vegas v. Foley*,
747 F.2d 1294 (9th Cir. 1984) ........................... 2, 4, 9, 14, 21, 22, 23

*Cornell, Howland, Hayes & Merryfield, Inc. v. Cont'l Cas. Co.*,
465 F.2d 22 (9th Cir. 1972) ...............................................................12

*Fletcher v. Peck*,
6 Cranch 87, 3 L.Ed. 162 ..........................................................19, 20

*Home Indem. Co. v. Lane Powell Moss & Miller*,
43 F.3d 1322 (9th Cir. 1995) .............................................................16

*In re Kelly*,
841 F.2d 908 (9th Cir. 1988) .............................................................21

*Lee v. City of Los Angeles*,
908 F.3d 1175 (9th Cir. 2018) ...........................................................20

*Mohawk Industries Inc. v. Carpenter*,
558 U.S. 100 (2009)...................................................................8, 9

*Nken v. Holder*,
556 U.S. 418 (2009)............................................................................24

*In re North Dakota Legislative Assembly*,
70 F.4th 460 (8th Cir. 2023) .............................................10, 11, 12

*Palmer v. Thompson*,
403 U.S. 217 (1971)....................................................................14, 19

*Perry v. Schwarzenegger*,
591 F.3d 1147 (9th Cir. 2010) ........................................................8, 9

*Powell v. Ridge*,
247 F.3d 520 (3d Cir. 2001) ...............................................14, 15, 25

*Puente Arizona v. Arpaio*,
314 F.R.D. 664 (D. Ariz. 2016) .......................................................11

*S.C. Educ. Ass'n v. Campbell*,
883 F.2d 1251 (4th Cir. 1989) ......................................................2, 18

*Soon Hing v. Crowley*,
113 U.S. 703 (1885)...........................................................................25

*Tenney v. Brandhove*,
341 U.S. 367 (1951)......................................................1, 11, 14, 19

*Va. Uranium, Inc. v. Warren*,
___ U.S. ___, 139 S. Ct. 1894 (2019) (plurality opinion)..................20

*Village of Arlington Heights v. Metropolitan Housing Development
Corp.*,
429 U.S. 252 (1977).................................................11, 12, 19, 20, 23

**Statutes**

A.R.S. § 12-1841.................................................. 1, 4, 5, 12, 13, 15,17

All Writs Act, 28 U.S.C. § 1651(a) ........................................................7

**Other Authorities**

Fed. R. Civ. P 30(b)(6)...................................................................5, 6, 7

Fed. R. Evid. 602 ....................................................................................................13

Unconstitutional Legislative Motive, The Supreme Court Review,
    Vol. 1971 (1971)..............................................................................................18

**INTRODUCTION**

Defendant Ben Toma, currently Speaker of the Arizona House of Representatives, and Defendant Warren Petersen, currently President of the Arizona Senate (collectively, the "Legislators") petition this Court for a writ of Mandamus reversing that part of the district court's September 14, 2023 order, Doc. 535 (attached as Exhibit 1), which holds that the Legislators waived their legislative privilege regarding their personal motives for voting in favor of two statutes, and requiring them to produce documents and submit to depositions about their involvement in the legislative process that led to the statutes in question.[1]

There is no dispute that the discovery the district court ordered falls within the scope of the legislative privilege, which applies where legislators or their aides were "acting in the sphere of legitimate legislative activity." *Tenney v. Brandhove,* 341 U.S. 367, 376 (1951). The district court, however, wrongly held that the Legislators had ipso facto *waived* that privilege merely by exercising their statutory right to intervene in the case to defend the constitutionality of the challenged laws, and by denying that the Arizona Legislature passed the laws with discriminatory intent.

A.R.S. § 12-1841 requires a plaintiff claiming that a statute is unconstitutional to serve a copy of the pleading on the Arizona Attorney General, the Speaker of the

---

[1] All references to "Doc. ___" refer to docket entries in the underlying case, *Mi Familia Vota v. Fontes,* No. 22-CV-00509-PHX-SRB.

House, and the President of the Senate, and grants each of them authority to intervene to defend the constitutionality of the statute. A legislative leader's mere exercise of a statutory right to intervene in such a case shouldn't be penalized by finding a waiver of the legislative privilege.

Moreover, when the legislature's motive is pertinent in a case, "it is the motivation of *the entire legislature*, not the motivation of a handful of voluble members, that is relevant." *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1262 (4th Cir. 1989) (emphasis added). As this Court made clear in *City of Las Vegas v. Foley,* 747 F.2d 1294, 1297 (9th Cir. 1984), the Court "prevents inquiry into the motives of legislators because it recognizes that such inquiries are a hazardous task," since "individual legislators may vote for a particular statute for a variety of reasons." There the Court issued a writ of mandamus barring the depositions of city officials to determine their "motives" for enacting a zoning ordinance.

We ask the Court to issue an immediate stay of the district court's discovery order and to issue a writ of mandamus invalidating that order.

## ISSUES PRESENTED

This petition presents two issues:

1.     Should the Court exercise mandamus jurisdiction and reverse that part of the district court's September 14, 2023 discovery order requiring them to

produce documents and submit to depositions about their involvement in the legislative process that led to the statutes in question?

2.     Should the Court issue an emergency order staying the district court's September 14, 2023 discovery order until this petition has been resolved?

## STATEMENT OF THE CASE

Plaintiffs claim that two recently enacted Arizona voting laws, H.B. 2243 and H.B. 2492 (the "Voting Laws") violate the United States Constitution. The Voting Laws, effective January 1, 2023, enabled government officials to require heightened proof of citizenship from Arizona registrants and mandate certain consequences if a registrant does not provide such proof.

The Arizona Senate passed the final version of H.B. 2243 on June 23, 2022 by a vote of 16-12; Petersen—who was not then the Senate President—was one of the 16 ayes. The Arizona House also passed the final version on June 23, 2022, by a vote of 31-27; Toma—who was not then House Speaker—was one of the 31 ayes. Then-Governor Doug Ducey signed the bill into law on July 6, 2022.

The Arizona Senate passed the final version of H.B. 2492 on March 23, 2022 by a vote of 16-12; again, Petersen was one of those voting in favor. The Arizona House passed the final version on February 28, 2022 by a vote of 31-26, with Toma voting in favor. Then-Governor Ducey signed the bill into law on March 30, 2022.

Various Plaintiffs filed eight separate complaints attacking the Voting Laws, and the district court consolidated those complaints. Doc. 164. The complaints attacked specific requirements of the Voting Laws, and also generally attacked the two laws as violative of equal protection under the Fourteenth Amendment, asserting among other things that a discriminatory purpose was a motivating factor in the legislature's adoption of the laws. *See* Doc. 304 at 14 (describing Plaintiffs' claims).

The complaints named the Arizona Secretary of State and Attorney General as defendants. Significantly, though, no complaint named any member of the Arizona legislature as a party. Indeed, none of the complaints even mention Toma, and only one complaint mentions Petersen in passing. Nor did any Plaintiff seek to depose any legislators or seek discovery from any of the legislators. This approach was consistent with the teaching of this Court and the Supreme Court that legislative purpose and intent could not be ascertained from the views of individual legislators. *See, e.g. Foley*, 747 F.2d at 1297.

Nevertheless, A.R.S. § 12-184 gives the Speaker of the House and the President of the Senate the express authority to intervene in lawsuits to defend the constitutionality of a statute, or to file briefs in such a case. And as the United States Supreme Court recently emphasized, "where a State chooses to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may

require the involvement of different voices with different perspectives." *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2201 (2022). "Permitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." *Id.* at 2202.

In January 2023, a new governor, attorney general and secretary of state took office, all Democrats, and Speaker Toma and President Petersen learned that the new attorney general did not intend to defend some aspects of the Voting Laws. In April 2023, Toma and Petersen thus intervened as of right under A.R.S. § 12-1841—in their official capacities —so they could defend the validity and constitutionality of the Voting Laws. *See* Doc. 348 (motion to intervene); Doc. 363 (order granting motion to intervene). In doing so, Toma and Petersen understood that, unless they were actual parties to the suit, they would not be able to ensure that an adverse decision could be reviewed on appeal.

After Toma and Petersen intervened, Plaintiffs served requests for production of documents ("RFPs") and non-uniform interrogatories ("NUIs") on them, relating to the adoption of the Voting Laws. *See* Doc. 500-1 at Ex. A. Plaintiffs also said they intended to depose the two Legislators as well. Plaintiffs also sought to notice a Fed. R. Civ. P 30(b)(6) deposition of the Arizona House of Representatives and the Arizona Senate, arguing that, by intervening, Speaker Toma and President Petersen

had "necessitated deposition testimony with respect to the legislature as an entity." Doc. 500 at 12-13.

Toma and Petersen responded by producing more than 90,000 pages of documents along with written answers to the NUIs. *See* Doc. 499 at 1. However, citing legislative privilege, they declined to produce a number of documents (for which they produced a privilege log), and also declined to answer various NUIs to the extent they infringed on the privilege. *See id.*; Doc. 500-1 at Ex. A. The Legislators also argued that the Rules of Civil Procedure did not allow a 30(b)(6) deposition of the "House of Representative" or the "Senate," and that in any event such a deposition would invade the legislative privilege. *See* Doc. 500-1 at Ex. D.

Plaintiffs moved to compel the requested discovery, arguing that, by exercising their statutory right to intervene in the lawsuit and by denying that the legislature passed the Voting Laws with discriminatory intent, the Legislators had waived the legislative privilege. Doc. 500.

In a September 14, 2023 Order (Doc. 535), the district court granted Plaintiffs' motion to compel and ordered the Legislators to "produce communications that they have sent or received relating to the Voting Laws' legislative process and have withheld on legislative privilege grounds." *See* Exhibit 1. The district court also held that the Legislators could "be deposed about their personal involvement in the

6

Voting Laws' legislative process." *Id.* The court denied Plaintiffs' request to depose the Arizona Legislature as an entity under Rule 30(b)(6). *Id.*

The Legislators then moved for a stay of the district court's September 14, 2023 discovery order. Doc. 543. On September 26, 2023, the district court denied that motion (Doc. 548) but allowed that the requested documents could be produced under a Protective Order to "protect the status quo and allow the parties to continue their trial preparations." Doc. 548 at 2, attached as Exhibit 2. In accordance with that order, the Legislators are provisionally producing the documents to Plaintiffs, for attorneys' eyes only, with the understanding that that the relief sought in this Petition would remedy this provisional disclosure.

Trial in the case is set to begin November 6, 2023, with a joint pretrial statement due on October 16. Doc. 485.

## I. This Issue Is Properly Reviewed By Mandamus.

The exceptional circumstances present in this case warrant jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a). The Court analyzes five factors in determining the propriety of mandamus:

(1) whether petitioners have no other adequate means, such as a direct appeal, to attain the relief they desire;

(2) whether petitioners will be damaged or prejudiced in a way not correctable on appeal;

(3)     whether the district court's order is clearly erroneous as a matter of law;

(4)     whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and

(5)     whether the district court's order raises new and important problems or issues of first impression.

The Court established these guidelines in *Bauman v. United States District Court,* 557 F.2d 650 (9th Cir. 1977), and reiterated them in *Perry v. Schwarzenegger,* 591 F.3d 1147, 1156 (9th Cir. 2010). But the *Bauman* factors are only "guidelines," and "not every factor need be present at once," though the third factor—clear error—must be present. *Perry,* 591 F.3d at 1156. Here, the first, second, third, and fifth factors all support the exercise of mandamus.

## A.     Petitioners Have No Other Adequate Means Of Relief And, Absent Mandamus, Will Be Prejudiced In A Way Not Correctable By Appeal.

This petition seeks review of a discovery order allowing the deposition of the Legislators on subjects protected by the legislative privilege and wholly irrelevant to the issues in the case. Unless the Legislators can appeal as of right under the collateral order doctrine, they have no other adequate means of relief than mandamus. And for the reasons discussed in *Perry,* it's unclear—based on the Supreme Court's ruling in *Mohawk Industries Inc. v. Carpenter*, 558 U.S. 100

(2009)—that petitioners can appeal the discovery order under the collateral order doctrine.

In *Mohawk,* the Supreme Court denied jurisdiction under the collateral order doctrine, finding that an ordinary appeal was adequate protection to correct the disclosure of information protected by the attorney-client privilege, noting that the "class of collaterally appealable orders must remain 'narrow and selective in its membership.'" 558 U.S at 112-113.

The kernel of the matter at issue here also involves a privilege—not an attorney-client privilege as in *Mohawk,* but a legislative privilege. In *Perry*, the Court found that whether *Mohawk* should be "extended to the First Amendment privilege presents a close question." 591 F.3d at 1156. Just as there are "distinctions between the First Amendment privilege and the attorney-client privilege," *id.,* there are also distinctions between the legislative privilege and the attorney-client privilege. However, since the Court in *Perry* "assume[d] without deciding" that claims of First Amendment privilege were not reviewable under the collateral order doctrine, petitioners seek review under mandamus.

We also note that this case presents some similar issues to those in *Foley,* where the Court found mandamus relief appropriate to deal with an improper discovery order that sought to allow the depositions of legislators to discover their "motives" in order to prove an "alleged illicit legislative motive." 747 F.2d at 1297.

*Cf. Am. Trucking Associations, Inc. v. Alviti*, 14 F.4th 76, 85 (1st Cir. 2021) (exercising advisory mandamus powers on legislative privilege ruling because it presented novel important questions that went to the "appropriate balance of power between the states and the federal government"); *In re North Dakota Legislative Assembly*, 70 F.4th 460, 462 (8th Cir. 2023) ("Mandamus is an appropriate remedy where a claim of privilege is erroneously rejected during discovery, because the party claiming privilege has no other adequate means to attain relief, and the enforcement of the discovery order would destroy the privilege.") (granting mandamus relief and quashing subpoenas on legislative privilege grounds).

Unless the Court grants mandamus relief, the Plaintiffs will be able to use the documents provisionally produced as attorneys' eyes-only in discovery and the upcoming trial and the Legislators will be required to submit to depositions asking about their personal motives for voting in favor of the Voting Laws. And once the documents are used or disclosed beyond the provisional attorneys' eyes-only designation and the testimony is given, there is no way to undo the disclosure.

Hence, the first and second *Bauman* factors support mandamus relief.

**B.**     <u>**For at least two reasons, the District Court's order was clearly wrong as a matter of law.**</u>

The third *Bauman* factor, clear error, also supports mandamus. The basis for the district court's discovery order was a finding that the Legislators had waived the legislative privilege by voluntarily intervening in the lawsuit. As discussed below,

that finding was plainly wrong. But even if the Legislators *had* waived the privilege, that still wouldn't justify allowing Plaintiffs to depose the Legislators about their individual, subjective motives for approving the Voting Laws. Neither this Court nor the Supreme Cour has ever allowed such; indeed, they have repeatedly held such depositions to be improper.

1. The Legislators Didn't Waive The Legislative Privilege By Intervening In The Lawsuit And Denying Plaintiffs' Claims About The Legislature's Intent.

To begin with, there is no dispute that the discovery Plaintiffs seek falls within the scope of the legislative privilege.

Legislative privilege applies where legislators or their aides were "acting in the sphere of legitimate legislative activity." *Tenney,* 341 U.S. at 376; *see also Puente Arizona v. Arpaio*, 314 F.R.D. 664, 670 (D. Ariz. 2016). That's the case here as to Toma and Petersen's involvement in the legislative process that led to enactment of the Voting Laws. And the "privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" *In re North Dakota Legislative Assembly,* 70 F.4th 460 (8th Cir. 2023) (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)).

In the *North Dakota* case, the Eighth Circuit held that the legislative privilege protected documents and testimony from state legislators and their aides, and thus granted mandamus relief. Although the district court, relying on dicta from *Village*

11

*of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 (1977), reasoned that redistricting legislation presented a "particularly appropriate circumstance for qualifying the state legislative privilege because judicial inquiry into legislative intent" was "specifically contemplated" as part of the "core issue," the Eighth Circuit disagreed. 70 F. 4th at 464. In doing so, the court cited the Supreme Court's observation in *Arlington Heights* that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," and are "usually to be avoided." *Id.* Moreover, the Eighth Circuit said, even where "intent" is an element of a claim, "statements by individual legislators are an insufficient basis from which to infer the intent of a legislative body as a whole." 70 F.4th at 465 (citing *United States v. O'Brien,* 391 U.S. 367, 383-84 (1968)). Here, too, legislative privilege bars the depositions Plaintiffs are seeking.

Nor did the Legislators waive the legislative privilege. "Waiver is the voluntary relinquishment of a known right." *Cornell, Howland, Hayes & Merryfield, Inc. v. Cont'l Cas. Co.*, 465 F.2d 22, 24 (9th Cir. 1972). The Court found that Toma and Petersen waived the legislative privilege by "voluntarily intervening in this lawsuit and putting their intent at issue." Doc. 535 at 2:27-28. Surely, though, merely intervening *as of right* under A.R.S. § 12-1841 to defend the constitutionality of a state statute can't be punished by finding an ipso facto waiver of the privilege, and

we're not aware of any case that so states. Notably, the Arizona Attorney General has the same legal authority under A.R.S. § 12-1841. Yet no one suggests that the Arizona Attorney General would waive her executive deliberative process privilege by intervening to defend the constitutionality of a statute.

The Court's discovery order raises significant separation of powers and federalism concerns. As already noted, the United States Supreme Court recently emphasized that "a full consideration of the State's practical interests may require the involvement of different voices with different perspectives." *Berger* 142 S. Ct. 2191 at 2201. Moreover, the district court's statement that Toma and Petersen put "*their* intent at issue" simply by "denying [in their answers to the complaints] Plaintiffs' allegations that the *Arizona Legislature* enacted the Voting Laws with discriminatory intent" (Doc. 535 at 3:24-27 (emphasis added)) is logically invalid and misapprehends the very nature of legislation. For example, as noted above, Petersen provided only one of the 16 votes by which the Arizona Senate passed H.B. 2243, and Toma provided only one of the 31 votes by which the Arizona House passed the same statute. And the Legislators' defense of the Voting Laws' constitutionality relies entirely upon public information, not anything covered by the legislative privilege.

Furthermore, neither Toma nor Petersen are competent to testify about another legislator's motives, and Fed. R. Evid. 602 limits their testimony to their "personal

knowledge of the matter." Indeed, any attempt by them to testify about other legislators' motives would run afoul of *those* legislators' privileges, which the district court held Toma and Petersen could not waive. *See* Doc. 535 at 6:3-4. And the Plaintiffs have not sought information regarding motives from any of the other members who voted in favor of the Voting Laws.

As the Supreme Court has more than once warned, "it is extremely difficult for a court to ascertain the motivation, or collection of different motivations, that lie behind a legislative enactment." *Palmer v. Thompson,* 403 U.S. 217, 224 (1971). And in the words of the Ninth Circuit, the court "prevents inquiry into the motives of legislators because it recognizes that such inquiries are a hazardous task," since "[i]ndividual legislators may vote for a particular statute for a variety of reasons." *Foley,* 747 F.2d at 1297 (exercising mandamus and directing that a private party was not entitled to depose city officials to determine their subjective motives for enacting a zoning ordinance). Simply put, it is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Tenney,* 341 U.S. at 377.

The district court's discovery order also relied on *Powell v. Ridge,* 247 F.3d 520 (3d Cir. 2001), to find a waiver, but that case didn't involve a waiver of privilege at all; the *Powell* court simply found that the "purported privilege" those legislators were claiming was not a recognized privilege at all. 247 F.3d at 526. Instead, the legislators there had tried to "build from scratch a privilege" which would allow

14

them "to seek discovery but not to respond to it; take depositions but not be deposed; and testify at trial, but not be cross-examined." *Id.* at 525. By contrast, Toma and Petersen assert only the traditional legislative privilege, and they do not seek to offer testimony at trial or take their own discovery, and they have produced more than 90,000 pages of documents requested by Plaintiffs. *See* Doc. 499.

Further, *Powell* did not involve legislative leaders' intervention in an official capacity pursuant to state statute. The legislators in *Powell* intervened in their *personal* capacities and had no statutory authority to intervene. Thus, unlike this case, those legislators sought to pursue their *personal* "financial and legal interests in the litigation." *Id.* at 522. They were not acting as representatives of the State or defending the constitutionality of state laws pursuant to state statute.

Here, the Speaker and the President only intervened in their official capacities—pursuant to A.R.S. § 12-1841(D)—to present their perspective of the State's interests in the constitutionality of the Voting Laws. They did so only when they learned that the attorney general's office did not intend to continue to defend some aspects of the Voting Laws. They have not, as in *Powell,* sought to turn "the shield of legislative immunity into a sword." 247 F.3d at 525. Indeed, the Legislators' intervention did not harm the plaintiffs any more than had the Legislators merely submitted briefs, as they were also entitled to do under A.R.S. § 12-1841. But the Legislators needed to intervene—not simply submit briefs—to

ensure that the State's interests, from the perspective of the Legislature, could be defended in any appeal should the attorney general's office decide not to do so. Nevertheless, the Legislators will be relying on the same records available to all the other parties.

Because the Legislators have not used privileged information in their defense, there is no "sword and shield" problem, a prerequisite for implied waiver. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (holding that implied waiver prevents the use of privilege information "as both a sword and a shield"). The "overarching consideration" in an implied waiver analysis "is whether allowing the privilege to protect against disclosure of the information would be manifestly unfair to the opposing party." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (quotation omitted). So an objective defense that does not introduce subjective privileged information does not implicitly waive the privilege. *See id.* (affirming decision that no implied waiver of attorney-client privilege existed where party proved reasonableness of the settlement amount "on objective terms apart from the advice of counsel"). Since the Legislators will be relying on the same evidence available to all parties, there will be no unfairness to Plaintiffs.

Rather than examining if the Legislators have affirmatively used privileged information (they have not), the district court's order focuses on the relevancy of the

information sought in discovery. Doc. 535 at 17-19. But that is not the proper inquiry. Because the Legislators *are relying only on the publicly available legislative history*, Plaintiffs are in the same position as they were prior to the Legislators' intervention.

Furthermore, finding a waiver in this case undermines the public policy behind A.R.S. § 12-1841(D). Speaker Toma and President Petersen, as well as other legislative leaders, will hesitate to participate in cases attacking the constitutionality of state laws if doing so will result in an automatic waiver of the legislative privilege.

To hold that the Speaker and the President, who are the only legislative officers authorized to intervene pursuant to Arizona law, have now waived their legislative privilege—even though they do not rely upon their individual motives to defend the questioned laws and will not offer any nonpublic documents or their own testimony in evidence—is contrary to the doctrine of implied waiver.

### 2. Toma And Petersen's Intent In Approving The Voting Laws Is Completely Irrelevant To This Case.

Whether or not Speaker Toma or President Petersen waived the legislative privilege the district court erred in allowing their depositions, because their personal motives for approving the Voting Laws are simply irrelevant, as the Supreme Court and many other courts have often held. While there may be times when the *legislature's* motive is pertinent in a case, "it is the motivation of the entire legislature, not the motivation of a handful of voluble members, that is relevant."

17

*S.C. Educ. Ass'n* , 883 F.2d at 1262. Plainly, a court cannot infer from the individual motivations of Messrs. Toma and Petersen what the motivation of the entire legislature was, nor would it be valid to impute their motives to the whole legislature. As a noted commentator has underscored:

> Attribution of the statements of some members of the decisionmaking body to the others cannot properly be justified on a theory of adoption by silence or the fiction of delegated authority to speak.

Paul Brest, Palmer v. Thompson: An Approach to the Problem of Unconstitutional Legislative Motive, The Supreme Court Review, Vol. 1971, p. 124 (1971).

Individual legislators vote to adopt a bill for many reasons. Few of the legislators will have been involved in the drafting of the bill, and they may not even be well-acquainted with all of its provisions. Here, for example, 1,613 bills were introduced during the 55th Legislature, Second Regular Session. And 392 bills were approved and transmitted to the governor. Legislators may vote for a bill in deference to their party leaders, or as an accommodation for getting other legislators to support a bill in which they have a particular interest. *See, e.g.*, *Austin v. Berryman*, 768 F. Supp. 188, 192 (W.D. Va. 1991) ("Legislation results from complex and frequently conflicting motivations and intentions. To assume that the judiciary is capable of divining a monolithic intent from such complexity in more than a handful of cases is nothing less than legal fiction.").

For these and many other reasons, federal courts have held since the 1810 Supreme Court case of *Fletcher v. Peck*, 6 Cranch 87, 130, 3 L.Ed. 162, that it was "not consonant with our scheme of government for a court to inquire into the motives of legislators…." *Tenney,* 341 U.S. at 377. That principle has "remained unquestioned." *Id.* Thus, in 1971, Justice Black, writing for a divided court in *Palmer v. Thompson,* 403 U.S. 217, 224 (1971), stated that "no case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it."

In *Arlington Heights,* for example, the court held that "[p]roof of racially discriminatory intent or purpose" was needed to show a violation of the Equal Protection Clause. 429 U.S. at 265. But such discriminatory intent was to be found through a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available," including the "legislative or administrative history," "contemporary statements by members of the decisionmaking body," "minutes of its meetings," or reports." *Id.* at 266, 268. Only in some undefined "extraordinary instances"—*which were not present in that case*—might testimony of individual legislative members about the "purpose" of the "official action" be considered, and even in such "extraordinary instances" such testimony "frequently will be barred by privilege."  429 U.S. at 268.

19

As the *Arlington Heights* court underscored, the Supreme Court "has recognized ever since *Fletcher v. Peck*" in 1810 that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," so that testimony of an individual legislator was "usually to be avoided." *Id.,* 420 U.S. at 268, n. 18. And following *Arlington Heights,* this Court has "likewise concluded that plaintiffs are generally barred from deposing local legislators, *even in* 'extraordinary circumstances.'" *Lee v. City of Los Angeles,* 908 F.3d 1175, 1187-88 (9th Cir. 2018) (emphasis added) (holding that the district court correctly barred the depositions of officials involved in the redistricting process because they were subject to the legislative privilege).

In fact, we are not aware of any case that has found the intention of the legislature by virtue of testimony of one or more individual legislators. To the contrary, the Supreme Court and lesser courts have continued to counsel against trying to discern a legislature's purpose based on the testimony of individual members. Indeed, only a few years ago the Supreme Court had occasion to reiterate that counsel. In *Va. Uranium, Inc. v. Warren*, ___ U.S. ___, 139 S. Ct. 1894, 1907-08 (2019) (plurality opinion), the Court said:

> Trying to discern what motivates legislators individually and collectively invites speculation and risks overlooking the reality that individual Members of Congress often pursue multiple and competing purposes, many of which are compromised to secure a law's passage and few of which are *fully realized in the final product*.

20

(Emphasis added.)

The Ninth Circuit has followed this counsel. As noted in *Foley,* 747 F.2d at 1297, the court "prevents inquiry into the motives of legislators because it recognizes that such inquiries are a hazardous task," since "individual legislators may vote for a particular statute for a variety of reasons." *Cf. In re Kelly,* 841 F.2d 908, 912 n.3 (9th Cir. 1988) ("To the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent . . . Stray comments by individual legislators . . . cannot be attributed to the full body that voted on the bill. The opposite inference is far more likely.") (internal citations omitted).

Putting aside that individual members' communications are rarely relevant to determining legislative intent, Plaintiffs have not shown that Toma and Petersen individually are important witnesses in this case, or that they have more relevant information than the other 88 members of the 55th Legislature, Second Regular Session. It appears that the only reason plaintiffs seek to depose Toma and Petersen is because they intervened in the case to defend the Voting Laws.

When the Voting Laws were adopted, Toma and Petersen were not the Speaker and President of their respective chambers—they were just legislators. And as already pointed out, across the 8 different complaints filed by Plaintiffs, there is only one mention of Petersen in one complaint, and zero mention of Toma. The

Promise Arizona Complaint alleges only that Petersen stated during a floor session "that H.B. 2243 is an amended version of H.B. 2617 with additional notice, but that it was 'otherwise identical' to H.B. 2617." [Case 2:22-cv-01602-SRB, Doc. 1 ¶ 40.] That's it.

Finally, Plaintiffs know the intent of individual legislators in passing a law is irrelevant. Otherwise, they would have named individual legislators in their complaints, or would have at least sought depose them and take discovery from them. But—with the exception of Speaker Toma and President Petersen after their intervention—Plaintiffs have done neither.

In sum, the third *Bauman* factor fully supports mandamus.

## C.  <u>The district court's order raises an important issue of first impression.</u>

The fifth *Bauman* factor also supports mandamus because this Court has never ruled on the precise issue presented here. In *Foley,* the Court found mandamus jurisdiction appropriate to prevent "inquiry into the motives of legislators," calling such inquiries a "hazardous task" since "[i]ndividual legislators may vote for a particular statute for a variety of reasons." 747 F.2d at 1297. The Court also stated, quoting the Supreme Court, that the "diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertain the truth, *precludes all such inquiries* as impracticable and futile.'" *Id.* quoting *Soon Hing v. Crowley,* 13 U.S. 703, 71-11 (1885) (emphasis added).

22

But *Foley* involved legislative motives in adopting a zoning ordinance allegedly violative of the First Amendment. Here, by contrast, Plaintiffs claim the Voting Laws violate the Fourteenth Amendment's guarantee of equal protection, and "[p]roof of racially discriminatory intent or purpose" is required to show such a violation. *See Arlington Heights,* 429 U.S. at 265. As the *Foley* Court stated in dicta, citing *Arlington Heights,* even where "a plaintiff must prove invidious purpose or intent, as in racial discrimination cases," the Supreme Court "has indicated that only in extraordinary circumstances might members of the legislature be called to testify," and even in those circumstances "the testimony may be barred by privilege." 747 F.2d at 1298, citing *Arlington Heights,* 429 U.S. at 268.

Whether the facts of this case present such an "extraordinary circumstance," and if so, whether such testimony may be barred by the legislative privilege, are issues of first impression. However, although *Arlington Heights* speculated there "might" be some "extraordinary instances" where members could be "called to the stand at trial to testify concerning the purpose of the official action," we are not aware of any case where the Supreme Court or this Court or any other circuit court has ever allowed such.

## II. The Court Should Issue An Emergency Stay Of The District Court's Discovery Order Until This Petition Has Been Resolved.

The Legislators also ask the Court to enter an immediate, emergency stay of the district court's September 14, 2023 discovery order (Doc. 535) until the Court

can rule on this Petition. As noted above, trial in this case is set for November 6, 2023, and a joint pretrial statement is due on Monday, October 16.

Although the district court's discovery order did not give the Legislators a specific deadline for producing the documents or submitting to the depositions, Plaintiffs have demanded that the documents be produced by September 29, 2023, have noticed depositions of Toma and Petersen for October 5 and 6, and threatened to seek sanctions if the Legislators fail to comply. In recent discussions, Plaintiffs have suggested they would be willing to consider pushing the depositions of Toma and Petersen back until the week before the October 16, 2023, joint pretrial statement is due.

In deciding whether to grant a stay of a discovery order, a "court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 426 (2009) (internal quotation omitted).

These four factors favor Toma and Petersen. As noted, the eight complaints the Plaintiffs filed don't name any individual legislators as defendants, don't mention Toma at all and mention Petersen only once, in passing, and don't base their claims on the personal motives of the individual legislators who voted for the Voting

Laws. This is hardly surprising, since federal courts have for many years disallowed inquiry into the motives of individual legislators in approving laws. *E.g. Soon Hing v. Crowley,* 113 U.S. 703, 710-11 (1885) ("The diverse character of such motives . . . precludes all such inquiries as impracticable and futile").

And the Legislators' mere intervention in this case does not somehow put their personal motives for voting in favor of the Voting Laws at issue or waive the legislative privilege. Their defense of the constitutionality of the Voting Laws has been and will continue to be limited to legal arguments based on existing, publicly available facts and documents. Unlike the legislators involved in *Powell v. Ridge*, Toma and Petersen have responded to appropriate document discovery and will not offer either their own testimony or the testimony of any other legislators to prove proper motive or any other issue.

Contemporaneously with the filing of this Petition, the Legislators are filing a separate emergency motion to stay the September 14, 2023 discovery order until the Court can resolve this Petition.

## CONCLUSION

For all the reasons discussed above and in the separate emergency motion for a stay, the Legislators ask the Court to issue an immediate emergency stay of the district court's discovery order (Doc. 535), grant mandamus jurisdiction over this matter, issue a writ reversing the challenged part of the district court's discovery

order, and direct the district court to enter a protective order as to the compelled

discovery.

RESPECTFULLY SUBMITTED this 29th day of September, 2023.

By: */s/Hannah H. Porter*
    Kevin E. O'Malley
    Hannah H. Porter
    Mark C. Dangerfield
    GALLAGHER & KENNEDY, P.A.
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225
    Attorneys for Petitioners

## STATEMENT OF RELATED CASES

Counsel for Petitioners are aware of no related cases pending before this or any other court.

Dated: September 29, 2023

GALLAGHER & KENNEDY, P.A.

By: */s/ Hannah H. Porter*
     Kevin E. O'Malley
     Hannah H. Porter
     Mark C. Dangerfield
     GALLAGHER & KENNEDY, P.A.
     2575 East Camelback Road
     Phoenix, Arizona 85016-9225
     Attorneys for Petitioners

## CERTIFICATE OF COMPLIANCE

This petition for writ of mandamus complies with the length requirements of Fed. R. App. P. 21(d) and 9th Cir. R. 21-2(c), excluding the parts of the document exempted by Fed. R. App. P. 21(a)(2)(C) and Fed. R. App. P. 32(f) because it does not exceed 30 pages.

This petition for writ of mandamus complies with the form requirements of Fed. R. App. P. 27(d), the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: September 29, 2023

GALLAGHER & KENNEDY, P.A.

By: */s/ Hannah H. Porter*
     Kevin E. O'Malley
     Hannah H. Porter
     Mark C. Dangerfield
     GALLAGHER & KENNEDY, P.A.
     2575 East Camelback Road
     Phoenix, Arizona 85016-9225
     Attorneys for Petitioners

28

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed Writ of Mandamus with the clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 29, 2023.

I also certify that on September 29, 2023, true copies of the foregoing Petition were mailed to:

Honorable Susan R. Bolton
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 522
401 West Washington Street, SPC 50
Phoenix, AZ 85003

I also certify that on September 29, 2023, true copies of the foregoing Petition were emailed to counsel of record.

Dated: September 29, 2023

GALLAGHER & KENNEDY, P.A.

By: */s/ Hannah H. Porter*
   Kevin E. O'Malley
   Hannah H. Porter
   Mark C. Dangerfield
   GALLAGHER & KENNEDY, P.A.
   2575 East Camelback Road
   Phoenix, Arizona 85016-9225
   Attorneys for Petitioners

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., | No. CV-22-00509-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Adrian Fontes, et al., | |
| Defendants. | |

In April 2023, the Speaker of the Arizona House of Representatives Ben Toma and President of the Arizona Senate Warren Petersen (collectively, the "Legislators") moved and were granted leave to intervene as defendants in this case. (Doc. 348, Mot. to Intervene; Doc. 363, 04/26/2023 Order.) The Legislators then invoked legislative privilege in response to Plaintiffs' discovery requests. (*See, e.g.*, Doc. 500-1, Ex. D.) Non-US Plaintiffs sought to compel discovery. (Doc. 502, Hr'g. Tr. at 87:7–88:9.) The Court ordered the parties to submit simultaneous briefs on the issue of whether the legislative privilege applies, which the parties filed on August 2, 2023. (Doc. 499, Defs.' Br.; Doc. 500, Pls.' Br.; Hr'g. Tr. at 87:7–88:20.)

## I.  PROCEDURAL HISTORY

The history of this litigation is set out in the Court's previous Orders. (*E.g.*, Doc. 304, 02/15/2023 Order.) Plaintiffs claim that two recently enacted laws, H.B. 2243 and H.B. 2492 (the "Voting Laws"), are unlawful because they violate multiple federal laws and provisions of the Constitution.  (*E.g.*, Doc. 67, LUCHA Compl. ¶¶ 329–35; Doc. 1,

22-cv-1381, AAANHPI Compl. ¶¶ 143–50.) No Plaintiff named the Legislators as defendants. (Pls.' Br. at 1.) However, under Arizona law, both the Speaker and President are "entitled to be heard" "[i]n any proceeding in which a state statute . . . is alleged to be unconstitutional." A.R.S. § 12-1841(A). The Speaker and the President may in their discretion either (1) intervene as a party, (2) file briefs in the lawsuit, or (3) choose not to participate in the lawsuit. *Id.* § 12-1841(D). The Legislators moved to intervene "in their official capacities, and on behalf of their respective legislative chambers." (Mot. to Intervene at 4.) Plaintiffs assert that the Legislators have since invoked the legislative privilege to "refuse to answer deposition questions regarding the enactment of the [Voting Laws], and . . . have objected to designating anyone to testify on behalf of their respective chambers under [Rule] 30(b)(6)" despite intervening to defend the Voting Laws on the merits. (Pls.' Br. at 1–3.)

## II.    LEGAL STANDARD & ANALYSIS

Legislative immunity grants state legislators "protection from criminal, civil, or evidentiary process that interferes with their 'legitimate legislative activity.'" *Puente Ariz. v. Arpaio*, 314 F.R.D. 664, 669 (D. Ariz. 2016) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980) (explaining that the legislative immunity of state legislators is "similar in origin and rationale" to that of Congresspeople). The legislative privilege, a corollary to legislative immunity, is a qualified privilege that shields legislators from compulsory evidentiary process. *Mi Familia Vota v. Hobbs*, -- F. Supp. 3d --, 2023 WL 4595824, at *4 (D. Ariz. July 18, 2023); *see United States v. Gillock*, 445 U.S. 360, 370–73 (1980) (limiting the scope of the legislative privilege for state legislators "where important federal interests are at stake, as in the enforcement of federal criminal statutes"). The legislative privilege is personal to each legislator. *Puente Ariz.*, 314 F.R.D. at 671.

### A.    The Legislators Waived the Legislative Privilege

Plaintiffs argue that the Legislators have waived their legislative privilege by voluntarily intervening in this lawsuit and putting their intent at issue. (Pls.' Br. at 5–7.)

1    Plaintiffs direct the Court to *Powell v. Ridge*, in which plaintiffs sued the Pennsylvania

2    governor and state officials claiming that the public education funding system was racially

3    discriminatory. 247 F.3d 520, 522 (3d Cir. 2001). Leaders of the state legislature intervened

4    in the lawsuit, "citing their financial and legal interests in the litigation and the need to

5    'articulate to the Court the unique perspective of the legislative branch of the Pennsylvania

6    government.'" *Id.* at 522–23. The legislators "explicitly concurred" in the other defendants'

7    motion to dismiss but asserted the legislative privilege after the plaintiffs sought discovery.

8    *Id.* at 523. The district court compelled discovery, after which the legislators appealed. *Id.*

9    In dismissing the legislators' interlocutory appeal for lack of jurisdiction, the Third Circuit

10    explained that the legislators "stray[ed] far beyond the bounds of traditional legislative

11    immunity" by fashioning a "privilege which would allow them to continue to actively

12    participate in [the] litigation by submitting briefs, motions, and discovery requests of their

13    own, yet allow them to refuse to comply with, and most likely, appeal from every adverse

14    order." *Id.* at 525.

15        The Legislators argue that *Powell* is distinguishable because the intervening

16    defendants "had no statutory authority to intervene," whereas the Legislators "intervened

17    in their official capacities pursuant to A.R.S. § 12-1841(D) to present their views on the

18    State's interests." (Defs.' Br. at 7.) This argument would allow the Arizona Legislature to

19    exercise its self-created right to intervene yet shield its leaders from ever waiving the

20    legislative privilege. Like the defendants in *Powell*, the Legislators "are not seeking

21    immunity from this suit," but instead seek to "actively participate in this litigation" yet

22    avoid the burden of discovery regarding their legislative activities. *Powell*, 247 F.3d at 525.

23    Plaintiffs did not seek discovery from the Legislators until the Legislators sought to "fully

24    defend the laws passed by the legislature." (Mot. to Intervene at 4, 11.) The Legislators

25    also specifically put their own motives for passing the Voting Laws at issue when denying

26    Plaintiffs' allegations that the Arizona Legislature enacted the Voting Laws with

27    discriminatory intent. (Pls.' Br. at 6; *see, e.g.*, Doc. 348-1, Ex. A, Ans. to AAANHPI

28    Compl. at 16–18 ¶¶ 131, 147–50, (denying allegations that the Voting Laws are

intentionally discriminatory); Doc. 348-1, Ex. A, Ans. to LUCHA Compl. at 98 ¶¶ 337–38 (same).)

The Legislators contend that they have not waived the privilege because their defense relies "solely upon the publicly available legislative history materials" instead of any privileged information or the testimony of any legislator "regarding his or her consideration of or passage of" the Voting Laws. (Defs.' Br. at 4–6.) The Legislators cite *Democratic National Committee v. Arizona Secretary of State's Office*, which considered whether political party and civic organization plaintiffs waived their First Amendment privilege by challenging state election laws. No. CV-16-01065-PHX-DLR, 2017 WL 3149914, at *4 (D. Ariz. July 25, 2017). In finding that the plaintiffs had not waived the privilege, the court noted that the plaintiffs used only publicly available information to support their claims and that "[t]he privileged information that the State Defendants [sought] evidently include[d] a substantial amount of proprietary predictive modeling and strategic communications, none of which *go to the heart of the case* or to the State Defendants' defense." *Id.* at *4–5 (emphasis added).

The Court is not persuaded by the Legislators' argument. Though the Legislators "avow[] to the Court" that they will not rely on privileged information in support of their defense, the information sought in discovery does in fact "go to the heart" of Plaintiffs claims and the constitutionality of the Voting Laws. *Id.* at 5; (Defs.' Br. at 6; *see* Plfs.' Br. at 6.) "Motive is often most easily discovered by examining the unguarded acts and statements of those who would otherwise attempt to conceal evidence of discriminatory intent." *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1071 (D. Ariz. 2014) (quoting *Cano v. Davis*, 193 F. Supp. 2d 1177, 1181–82 (C.D. Cal. 2002) (Reinhardt, J., concurring in part and dissenting in part)). And contrary to the Legislators' argument, the Court is not "[a]pplying a blanket waiver of legislative privilege" whenever Arizona's legislative leaders intervene under § 12-1841(D), but instead finds that the Speaker and President each waived their privilege by intervening to "fully defend" the Voting Laws and putting their motives at issue. (*See* Defs.' Br. at 3.)

The Legislators assert that finding waiver would undermine the purpose of allowing for legislative participation in federal lawsuits, specifically, that "[p]ermitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." (*Id.* at 2–3 (quoting *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2202 (2022)). However, the *Berger* Court analyzed only whether legislative leaders possessed a legitimate interest to intervene in the lawsuit under Rule 24; the legislative privilege was not at issue. 142 S. Ct. at 2201–03 ("[F]ederal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law."). But the legislative privilege's animating purpose is "to allow duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box," and "minimize[e] the distraction of diverting their time, energy, and attention from their legislative tasks to defend the litigation." *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) (citation and internal quotation marks omitted) (cleaned up); *Kay v. City of Rancho Palos Verdes*, No. CV 02–03922 MMM RZ, 2003 WL 25294710, at *11 (C.D. Cal. Oct. 10, 2003) (indicating that the "underlying policy goal" of the privilege is to "protect[] legislators from interference with their legislative duties" (citation omitted)). "[T]he only reasonable inference from the Legislators' litigation conduct is that they have decided to forego that 'protection' in pursuit of an opportunity to defend in court their decisions as legislators . . . ." *Singleton v. Merrill*, 576 F. Supp. 3d 931, 941 (N.D. Ala. 2021) (cleaned up) (observing that the intervening legislator defendants "put in issue the very facts that they now assert their immunity covers").

The Court finds that the Legislators have waived their legislative privilege.[1] The Legislators must produce communications sent or received by either the Speaker or the

---

[1] Because the Court finds that the Speaker and President have waived the legislative privilege, it need not consider Plaintiffs' argument that the balance of factors favor overcoming the privilege. (*See* Pls.' Br. at 7–9.)

1   President which have been withheld on legislative privilege grounds. Plaintiffs may also

2   depose the Legislators about their personal perspectives of the Voting Laws' legislative

3   process. (*See* Pls.' Br. at 2–3.) However, "[t]he legislative privilege 'is a personal one,'"

4   and the Speaker or President could not waive the privilege for their fellow legislators.

5   *Puente Ariz.*, 314 F.R.D. at 671 (quoting *Marylanders for Fair Representation, Inc. v.*

6   *Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992)). To the extent Plaintiffs seek information

7   held by other members of the Arizona Legislature, it remains protected by the legislative

8   privilege.

9         **B.**    **Plaintiffs May Not Depose the Arizona Legislature as an Entity**

10        Federal Rule of Civil Procedure 30(b)(6) permits a party to depose a "public or

11  private corporation, a partnership, an association, a governmental agency, or other entity,"

12  which then "must designate one or more officers, directors, or managing agents . . . to

13  testify on its behalf." Plaintiffs seek to depose the Arizona House of Representatives and

14  the Arizona Senate and assert that the Speaker and the President "have necessitated

15  deposition testimony with respect to the legislature as an entity" by intervening "on behalf

16  of their respective legislative chambers." (Pls.' Br. at 9–10.) Specifically, Plaintiffs seek to

17  depose the Arizona Legislature about (1) the Legislature's "drafting, introduction,

18  amendment, passage, and enactment" of the Voting Laws, (2) the Legislature's objectives,

19  motives, and information considered when drafting and passing the Voting Laws, and (3)

20  individual legislators' communications with other legislators or third parties. (*See* Doc.

21  499-1, Ex. 1, at 5–7.) The Legislators counter that Plaintiffs seek information protected by

22  the legislative privilege and that a 30(b)(6) deposition is "unworkable in terms of preparing

23  and identifying a single witness who can present binding testimony on behalf of the"

24  Arizona Legislature. (Defs.' Br. at 8.)

25        The Court agrees with the Legislators that a 30(b)(6) deposition of the Arizona

26  Legislature "would effectively force a waiver of every single legislator's individual

27  legislative privilege. (Defs.' Br. at 8.) In *Alliance for Global Justice v. District of*

28  *Columbia*, plaintiffs sought to compel the District of Columbia to produce a Rule 30(b)(6)

deponent to testify about the District Council's "collective knowledge" of its investigation into the District's "policing of mass demonstrations." 437 F. Supp. 2d 32, 34–35 (D.D.C. 2006). The District asserted that the Council's investigative activities were protected by the District's speech and debate statute.[2] *Id.* at 36. In declining to compel the District to produce a Rule 30(b)(6) deponent, the court explained:

> [T]he [District's] speech and debate statute shields from discovery the Council's knowledge and views of the report and of District policies. Plaintiffs are seeking testimony relating to a Council investigation, which was conducted as part of the Council's deliberative and legislative process. They also appear to be seeking testimony about the Council's understanding and interpretation of its own statutes. Both areas of testimony clearly fall within the "legislative sphere" and are shielded by the District's speech and debate statute. Therefore, to the extent that plaintiffs are arguing that the "collective knowledge" of the District includes the knowledge of and views of the Council, plaintiffs are not entitled to such testimony. *The fact that plaintiffs seek to obtain the Council's knowledge and views via a Rule 30(b)(6) deponent and disclaim any intention of directly questioning any Council member or staff is irrelevant.* By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative [to testify] . . . on matters reasonably known by the responding entity. *That preparation would require the very type of intrusion into the Council's legislative activities that the speech and debate statute was intended to prevent.*

*Id.* at 37 (emphasis added).

Here, Plaintiffs similarly seek to compel the Arizona Legislature to designate (a) deponent(s) who "can testify as to the collective knowledge" of the Legislature.[3] (*See* Pls.'

---

[2] Though the court in *Alliance for Global Justice* considered the Council's evidentiary privilege in the context of the District's speech and debate statute, this does not change this Court's analysis. Legislative immunity for state legislators derives from the "interpretation of federal law" and does "not depend on the presence of a speech or debate clause in the constitution of any State." *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 404 (1979) (citing *Tenney*, 341 U.S. at 377); *Consumers Union of U.S., Inc.*, 446 U.S. at 732 (1980). And the logic underscoring legislative immunity "supports extending the corollary legislative privilege" to state legislators as well. *Lee*, 908 F.3d at 1187; *see Mi Familia Vota*, 2023 WL 4595824, at *7 (explaining that "both the legislative privilege and legislative immunity 'involve the core question whether a lawmaker may be made to answer—either in terms of questions or in terms of defending from prosecution'" (quoting *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 237 (5th Cir. 2023))).

[3] The parties dispute whether the appropriate defendants are the Speaker and the President or the Arizona House of Representatives and the Arizona Senate. (Doc. 500-1, Ex. C, at 45–46; Doc. 500-1, Ex. D, at 50.) The Court need not decide who is the appropriate defendant, as the legislative privilege shields the Arizona Legislature's legislative activities regardless. *See All. for Glob. Justice*, 437 F. Supp. 2d at 37 ("Regardless of who is the defendant, the speech and debate statute shields from discovery the Council's knowledge . . . .").

Br. at 9–10 (asserting that the Legislators "have necessitated deposition testimony with respect to the legislature as an entity").) And Plaintiffs' proposed deposition topics concern "legitimate legislative activities" that fall within the scope of the legislative privilege. *Tenney*, 341 U.S. at 376; *see Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the things generally done in a session of the House, concerning matters within the legitimate legislative sphere." (internal citations and quotation marks omitted)); *Puente Ariz.*, 314 F.R.D. at 670–71 (finding the legislative privilege protects "a legislator's communications that bear on potential legislation" (citation and internal quotation marks omitted)); *Mi Familia Vota*, 2023 WL 4595824, at *8 (same); (Doc. 499-1, Ex. 1, at 5–7 (listing deposition topics).) The Court denies Plaintiffs' request to compel the Arizona House of Representatives and Senate to prepare a 30(b)(6) deponent to testify as to these topics because doing so would intrude upon the protections afforded by the legislative privilege. *All. for Glob. Justice*, 437 F. Supp. 2d at 37; *Puente Ariz.* 314 F.R.D. at 671 (analyzing the Arizona Legislature's waiver of the legislative privilege as an entity); *see also Marylanders for Fair Representation*, 144 F.R.D. at 299 (finding Maryland legislators' preparation and consideration of a legislative redistricting plan fell "within the sphere of legitimate legislative activity" and "*any* inquiry into the *Maryland Legislature's consideration* of [the plan] . . . [was] entirely barred" (second emphasis added)).

Plaintiffs alternatively ask the Court to prevent the Legislators from presenting arguments on behalf of the Arizona Legislature and require the Legislators to instead participate as defendants in their individual capacities. (Pls.' Br. at 10.) But the Speaker and the President are authorized to defend Arizona's statutes and the Court declines to limit their right to represent the Arizona Legislature's interests. A.R.S. § 12-1841(D); *N.C. State Conf. of the NAACP*, 142 S. Ct. at 2201 (explaining that "[s]tates possess 'a legitimate interest in the continued enforcement of their own statutes,'" which may "be practically impaired or impeded if [their] duly authorized *representatives* are excluded from participating in federal litigation challenging state law" (quoting *Cameron v. EMW*

*Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022)) (cleaned up) (emphasis added)).

## III.    CONCLUSION

The Speaker and the President have waived their legislative privilege as to information about their motives for the Voting Laws. The Speaker and President must produce communications that they have sent or received relating to the Voting Laws' legislative process and have withheld on legislative privilege grounds. They may also be deposed about their personal involvement in the Voting Laws' legislative process. Plaintiffs may not however conduct a 30(b)(6) deposition of the Arizona Legislature.

**IT IS ORDERED** granting in part and denying in part Plaintiffs' Motion to Compel (Doc. 500).

**IT IS FURTHER ORDERED** that the Speaker and the President must produce communications relating to the Voting Laws legislative process that they have sent or received and have withheld on legislative privilege grounds.

Dated this 14th day of September, 2023.

Susan R. Bolton
United States District Judge

- 9 -

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., | No. CV-22-00509-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., | |
| Defendants. | |
| **AND CONSOLIDATED CASES** | |

Eight days after the Court issued its Order finding a waiver of their legislative privilege and ordering production of requested documents and their depositions, Intervenor-Defendants, Speaker of the Arizona House Ben Toma and President of the Arizona Senate, Warren Petersen filed their Motion to Stay Pending Appeal declaring their intention to seek of Writ of Mandamus from the Ninth Circuit Court of Appeals. If their request for a stay is denied, Intervenor-Defendants ask the Court to stay its September 14, 2023 Order for 10-days[1] to allow them to submit an emergency Motion to Stay to the Court of Appeals. Non-U.S. Plaintiffs responded in opposition on September 25, 2023. The Arizona Secretary of State also filed his opposition on September 25, 2023. Because

---

[1] Presumably Intervenor-Defendants want the Court to stay its September 25, 2023 Order for 10-days from the date of its Order denying the Stay. If granted, the Court's Order requiring production of documents and depositions would be stayed until at least October 6, 2023, one month before the start of trial.

Intervenor-Defendants requested an expedited ruling and because the Court finds the Motion to Stay without merit, it will not await a Reply before issuing this denial.

Intervenor-Defendants' arguments that they are likely to prevail on the merits of a Writ of Mandamus are unpersuasive. They re-argue the arguments already rejected by this Court in its September 25, 2023 Order. Moreover, as pointed out by the Non-U.S. Plaintiffs, they have wholly failed to show any likelihood of receiving relief from the Court of Appeals on a request for the extraordinary relief of mandamus on a discovery order.

Trial in this case is set to begin on November 6, 2023. As the parties all agreed, it is of utmost importance that the issues before this Court are decided in advance of the 2024 elections. Any stay of September 25, 2023 Order could jeopardize that trial date. The Court is persuaded by the argument of the Secretary of State that production of the documents under a Protective Order will protect the status quo and allow the parties to continue their trial preparations.

IT IS ORDERED denying Intervenor-Defendants Speaker Toma and President Petersen's Motion to Stay Pending Appeal. (Doc. 543)

IT IS FURTHER ORDERED denying the alternatively requested 10-day stay of the September 25, 2023 Order.

Dated this 26th day of September, 2023.

Susan R. Bolton
United States District Judge

- 2 -