No. 23-70179

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE TOMA, ET AL.,

*Petitioners*,

On Petition for a Writ of Mandamus to the United States District Court
for the District of Arizona, No. 2:22-CV-00509 (Bolton, J.)

## NON-U.S. PLAINTIFFS' OPPOSITION TO LEGISLATORS' PETITION FOR A WRIT OF MANDAMUS

BRUCE SAMUELS
JENNIFER LEE-COTA
PAPETTI SAMUELS WEISS
   MCKIRGAN LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, Arizona 85254
(480) 800-3530
bsamuels@pswmlaw.com

KELSEY QUIGLEY
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
(650) 858-6000
kelsey.quigley@wilmerhale.com

SETH P. WAXMAN
CHRISTOPHER E. BABBITT
DANIEL S. VOLCHOK
BRITANY RILEY-SWANBECK
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
daniel.volchok@wilmerhale.com

*Counsel for the Democratic National Committee and the Arizona Democratic Party*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................. 1

STATEMENT ....................................................................................... 5

ARGUMENT ........................................................................................ 7

THE EXTRAORDINARY RELIEF OF MANDAMUS IS UNAVAILABLE FOR
MULTIPLE REASONS ........................................................................... 7

    A.    Petitioners Cannot Show A "Clear And Indisputable
    Right" To Mandamus ................................................................ 7

        1.    No Case Supports Petitioners' Position, And The
        Most Analogous Cases Reject It ................................... 7

        2.    Petitioners' Relevance Arguments Are Waived
        And Meritless ........................................................... 16

        3.    The Petition Offers No Challenge To An
        Alternative Ground On Which The District Court's
        Order Can Be Upheld, Namely That Petitioners'
        Qualified Privilege Is Overcome ............................... 19

        4.    Application Of The *Bauman* Factors Confirms
        That Mandamus Is Unavailable Here ........................ 24

    B.    Petitioners Cannot Show That They Have No Adequate
    Alternative Means To Attain The Desired Relief .............................. 28

    C.    Mandamus Is Not "Appropriate Under The
    Circumstances" ...................................................................... 30

    D.    Responses To The Motions Panel's Order ......................................... 31

        1.    The Scope And Application Of Legislative
        Privilege ................................................................... 32

i

2. The Conditions Under Which A Legislator Waives Legislative Privilege ................................................................ 33

3. The Relevance Of The Requested Information To The Constitutionality Of The Challenged Laws ...................... 35

CONCLUSION ...................................................................................... 36

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

### CASES

Page(s)

*American Trucking Associations v. Alviti*, 14 F.4th 76 (1st Cir. 2021)...................30

*Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977)................................24

*Becker v. U.S. District Court*, 993 F.3d 731 (9th Cir. 2021)....................................7

*Bennett v. City of Boston*, 54 F.3d 18 (1st Cir. 1995)...............................................30

*Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) (en banc) ................................2

*Cheney v. U.S. District Court*, 542 U.S. 367 (2004) ................................................31

*Dahda v. United States*, 138 S.Ct. 1491 (2018)........................................................19

*Ex parte Fahey*, 332 U.S. 258 (1947) ...........................................................7, 8, 27

*Home Indemnity Company v. Lane Powell Moss & Miller*, 43 F.3d
    1322 (9th Cir. 1995) ..........................................................................................14

*In re Grand Jury*, 821 F.2d 946 (3d Cir. 1987) .......................................................32

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir.
    1997) ...................................................................................................................30

*In re North Dakota Legislative Assembly*, 70 F.4th 460 (8th Cir. 2023)............8, 20

*In re Walsh*, 15 F.4th 1005 (9th Cir. 2021)................................7, 10, 15, 25, 26, 33

*Jefferson Community Health Care Centers, Inc. v. Jefferson Parish
    Government*, 849 F.3d 615 (5th Cir. 2017) ....................................................32

*Kerr v. United States District Court*, 426 U.S. 394 (1976) ................................7, 28

*Mi Familia Vota v. Hobbs*, ___ F.Supp.3d ___, 2023 WL 4595824
    (D. Ariz. July 18, 2023).......................................................................19, 21, 22

*Miller v. French*, 530 U.S. 327 (2000) .............................................................7, 27

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) .................4, 12, 28, 29

*Newton v. National Broadcasting Company*, 726 F.2d 591 (9th Cir. 1984) ..................................................................................29

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010)......................................24

*Powell v. Ridge*, 247 F.3d 520 (3d Cir. 2001) ...............................................9, 10, 15

*Simmons v. City of Racine, PFC*, 37 F.3d 325 (7th Cir. 1994) ...............................30

*Sol v. Whiting*, 2013 WL 12098752 (D. Ariz. Dec. 11, 2013) ...............................21

*Tenney v. Brandhove*, 341 U.S. 367 (1951)...............................................................32

*United States v. Nixon*, 418 U.S. 683 (1974)............................................................30

*United States v. Ryan*, 402 U.S. 530 (1971) .............................................................28

*Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977) ...................................................18, 21, 35

## STATUTES AND RULES

Arizona Revised Statutes §12-1841............................................................ 31, 33-35

Federal Rule of Evidence 501 ........................................................................34, 35

## OTHER AUTHORITIES

Petersen Floor Amendment, *available at* https://www.azleg.gov/ legtext/55leg/2R/adopted/S.2243PETERSEN0501.docx.htm (visited October 20, 2023) ................................................................................5

Petition for a Writ of Certiorari, *Ryan v. Powell*, No. 00-1854, 2001 WL 34125228 (U.S. June 12, 2001)............................................................15

**INTRODUCTION**

Plaintiffs brought this litigation to challenge two Arizona election laws enacted last year that make it harder to register to vote, harder to stay registered, and harder to cast a ballot. No plaintiff, however, sued either petitioner. Petitioners injected themselves into the case (after litigation had been underway for more than a year), moving to intervene as defendants to, in their words, "*fully defend* the laws passed by the legislature." D.Ct. Dkt. 348 at 11 (emphasis added).[1]

Until petitioners intervened, no party sought discovery from either of them. Once petitioners voluntarily joined the litigation as full parties, however, and once they disputed a core question of fact (whether the Arizona legislature passed the challenged laws with discriminatory intent), plaintiffs sought to test the legislators' position in discovery, as plaintiffs had done with other defendants. But unlike other defendants, petitioners balked, asserting that legislative privilege rendered them immune to having their factual assertions tested. The district court rejected that claim, ruling that petitioners had waived privilege by choosing to intervene and engage on a critical factual dispute.

---

[1] Citations herein to ECF-filed documents are to page numbers of the original document rather than numbers added by the ECF system.

Challenging that interlocutory discovery ruling, petitioners ask this Court to embrace—through the extraordinary remedy of mandamus, no less—a position that no court has ever approved. Petitioners' position is that a party can voluntarily intervene as a defendant in litigation ("to fully defend" against the claims, D.Ct. Dkt. 348 at 11) *and* make assertions about a core disputed factual issue, but then invoke privilege to block the other side from exploring those assertions through the discovery process to which every other party is subject under the Federal Rules of Civil Procedure. The reason no court has ever approved that position is likely because it is wholly foreign to foundational principles of our adversarial judicial system, and to basic fairness. Indeed, this Court sitting en banc has rejected the legislators' position, explaining that in situations like this, a "court … gives the holder of the privilege a choice: If you want to litigate …, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend." *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc). In other words, "parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.* at 719. Petitioners' position flouts this binding precedent. And again, they have cited no contrary authority.

Nor, tellingly, have petitioners ever offered any explanation for why what they seek *should* be allowed, why their position is *not* grossly unfair. (They will of

course have another chance to do so, in their mandamus reply.)  Instead, petitioners

have resorted to pervasive labeling, principally referring to their "mere" choice to

intervene and their "mere" engagement with factual disputes.  ECF 1 at 1, 2, 12,

25.  That does nothing to render their position remotely equitable.

      The lack of judicial support for petitioners' position means that mandamus is

unavailable, because that extraordinary remedy requires petitioners to show they

have a clear and indisputable right to relief.  They cannot make that showing when

no case has ever recognized the underlying right they claim.  Many of petitioners'

challenges to the district court's ruling, moreover, are waived, and therefore cannot

support mandamus.  Finally, petitioners raise no challenge to an alternative

argument made below, namely that even if petitioners' legislative privilege is not

waived, it is overcome under a commonly used five-factor balancing test.  The

district court did not need to reach that argument, but the argument was preserved

below and fully supports the court's order.  By itself, petitioners' failure to

challenge that independent basis precludes any showing of a clear and indisputable

right to mandamus.

      The writ is independently unavailable because petitioners cannot make a

second required showing: that they have no other way to obtain their desired relief.

Their desired relief is not to have to disclose supposedly privileged materials.  And

there is a "long-recognized" alternative way of attaining that, which is not to

comply with the discovery order and then appeal any resulting sanctions or contempt order. *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).

If more were somehow needed, petitioners cannot make the required showing that mandamus is appropriate under the circumstances. That is partly for the reason already given: Petitioners voluntarily injected themselves into the lawsuit and made factual assertions about a central issue in the case. Having done so, petitioners have no sound claim to equitable relief from discovery into those assertions. But mandamus is also inappropriate given the legislators' delay tactics. Having waited over a year to intervene in litigation where all other parties have cooperated in moving quickly (so that the claims can be resolved before the 2024 elections begin), the legislators should not be rewarded with extraordinary relief from this Court—potentially in the middle of trial, no less—that would interfere with the district court's ability to fully evaluate whether the challenged laws are unlawful and infringe many thousands of Arizonans' fundamental right to vote.

Mandamus should be denied—and because of the petition's utter lack of merit and the time sensitivity (trial will be more than half over when this appeal is argued), the stay should be lifted immediately after oral argument (or even before), or as soon thereafter as feasible. *See* ECF 9 at 2-3 ("The stay shall remain in effect until the merits panel decides this petition or … lift[s] the stay.").

**STATEMENT**

Arizona enacted the two voting laws challenged here (H.B. 2492 and 2243) in 2022.  The laws impose various barriers to registration and voting.  For example, the laws penalize those who do not provide satisfactory documentary proof of U.S. citizenship; those penalties include possible investigation and prosecution, as well as an outright ban on voting in most elections—including for president of the United States—and on voting by mail in *any* election.[2]

The United States and the other plaintiffs in these eight consolidated cases sued to challenge the two statutes as violating federal law.  Recognizing the need to have their claims resolved before the 2024 elections, so that those elections could be conducted in an orderly fashion, plaintiffs moved fast; indeed, this litigation began *one day* after the first challenged law was signed into law.  And while petitioners imply that discovery of them was somehow delayed, plaintiffs in fact served targeted discovery requests on petitioners (four interrogatories and four requests for production) shortly after petitioners intervened.  Petitioners, by contrast, have sought to delay at every turn.  They did not intervene until over a year after this litigation began; they did not make the required initial disclosures by

---

[2] Petitioners' claim that they played no special role in the laws' enactment, *e.g.*, ECF 1 at 13, is inaccurate.  Speaker Toma co-sponsored H.B. 2492, and President Petersen was responsible for a key floor amendment to H.B. 2243.  *See* Petersen Floor Amendment, *available at* https://www.azleg.gov/legtext/55leg/2R/ adopted/S.2243PETERSEN0501.docx.htm (visited October 20, 2023).

the Federal Rules' deadline, and they requested extensions of time just to *object* to plaintiffs' discovery requests. When the district court rejected their privilege-based plea to avoid complying with those requests, moreover, they waited over a week—at a time when trial was less than two months away—to ask that court for a stay.[3]

After receiving full briefing, the district court denied a stay, finding that petitioners had waived legislative privilege by (1) intervening to (in their words) "fully defend the [challenged] laws," i.e., choosing to "actively participate in this litigation," and (2) disputing a critical factual allegation in "denying … that the Arizona Legislature enacted the Voting Laws with discriminatory intent." D.Ct. Dkt. 535 at 3.

Petitioners then sought a stay from this Court, which a divided motions panel granted. ECF 9. The majority did not state that petitioners were likely to succeed in obtaining mandamus, or that petitioners have no alternative means of obtaining the desired relief. It did state, however, that "[i]n granting a stay, we do not intend to constrain the merits panel's consideration of the merits of this petition in any way." *Id.* at 2.

---

[3] Plaintiffs made these same points in opposing petitioners' stay motion. *See* ECF 4-1 at 3. Petitioners' answer in reply was the entirely conclusory statement that "Plaintiffs' … aspersions regarding delay … are unavailing." ECF 5 at 12 n.3.

## ARGUMENT

**THE EXTRAORDINARY RELIEF OF MANDAMUS IS UNAVAILABLE FOR MULTIPLE REASONS**

The Supreme Court and this Court have repeatedly recognized that mandamus is a "drastic and extraordinary" remedy, "reserved for really extraordinary causes." *Ex parte Fahey*, 332 U.S. 258, 259-260 (1947), *quoted in Becker v. U.S. District Court*, 993 F.3d 731, 732 (9th Cir. 2021). This Court has further explained that mandamus is "especially difficult" to obtain "in the discovery context." *In re Walsh*, 15 F.4th 1005, 1010 (9th Cir. 2021). Here, it is unavailable for any of several reasons.

### A. Petitioners Cannot Show A "Clear And Indisputable Right" To Mandamus

#### 1. *No Case Supports Petitioners' Position, And The Most Analogous Cases Reject It*

a. Mandamus "requires a showing of a 'clear and indisputable' right to the … writ." *Miller v. French*, 530 U.S. 327, 339 (2000); *accord Kerr v. U.S. District Court*, 426 U.S. 394, 403 (1976). Petitioners cannot meet this demanding standard when they cite *not one case* accepting their position that a party can intervene in a lawsuit—and make factual assertions about a core issue in the litigation, as petitioners have done (*see* D.Ct. Dkt. 535 at 3)—and then unilaterally block the other side from exploring those assertions in discovery. To plaintiffs' knowledge, there is no case permitting this. No more is needed to conclude that

- 7 -

this is not the rare, "really extraordinary" case warranting mandamus, *Fahey*, 332 U.S. at 260.

Petitioners, however, contend that *In re North Dakota Legislative Assembly*, 70 F.4th 460 (8th Cir. 2023), supports their position. ECF 1 at 10-12. But the legislators there had not voluntarily intervened in the litigation (they were not parties at all)—nor had they disputed core factual allegations in the litigation (save for one of them, discussed later in this paragraph). *See* 70 F.4th at 465. There was accordingly no question of whether those legislators had waived privilege by trying to have things both ways, i.e., defending the propriety of the legislature's intent but asserting privilege to block discovery into that issue. In fact, the Eighth Circuit denied mandamus as to the one legislator who the district court ruled *had* waived privilege, precisely because he inserted himself into a factual dispute related to legislative intent. *See id.* at 465. If anything, then, petitioners' leading case undermines the notion that petitioners can meet the high bar required for mandamus.

Plaintiffs made these same points in opposing petitioners' stay motion. *See* ECF 4-1 at 8-9. In response, petitioners' reply sought to distinguish *In re North Dakota* (their own cited case) by asserting that unlike the legislators there, they had not failed to "challenge [an] independent ground for" the district court's order, ECF 5 at 8. In fact, that is exactly what happened here. As elaborated below, *see*

pp.19-20, the mandamus petition does not challenge a basis for the district court's ruling that is "independent" of the court's waiver finding, namely that if the privilege is not waived then it is overcome under a five-factor test that courts commonly apply in light of the qualified nature of the legislative privilege. Again, then, petitioners' own leading case shows that petitioners cannot satisfy the demanding mandamus standard.[4]

b.    The Eighth Circuit is not alone in rejecting petitioners' position. The Third Circuit did so in another very similar case, which the district court relied on here. *See Powell v. Ridge*, 247 F.3d 520 (3d Cir. 2001). As the court recognized, *Powell* held that the legislators there could not do the same things that petitioners seek to do: (1) "interven[e] in the lawsuit, 'citing … the need to articulate to the Court the unique perspective of the [state] legislative branch'"; (2) "'concu[r]' in the other defendants' [dispositive] motion"; and then (3) "asser[t] the legislative privilege after the plaintiffs sought discovery." D.Ct. Dkt. 535 at 3 (quoting

---

[4] Petitioners' stay reply also claimed that plaintiffs had "omit[ted] crucial details" about *In re North Dakota*, and given "short shrift to the main opinion." ECF 5 at 8. These complaints were baseless. As to the "main opinion," plaintiffs explained (as they do here) that the legislators to whom the Eighth Circuit granted mandamus were not similarly situated to petitioners because those legislators had not intervened or engaged with key factual issues, and thus there was no issue of waiver. ECF 4-1 at 8-9. And the "crucial detail" plaintiffs supposedly omitted was that *In re North Dakota* denied mandamus as to one legislator "because the legislator 'declined' to challenge this independent ground for issuance of the subpoena. ECF 5 at 8. Plaintiffs' opposition discussed that "detail" in the same terms they do here. *See* ECF 4-1 at 9.

*Powell*, 247 F.3d at 522-523) (other quotation marks omitted). It cannot possibly have been "a judicial usurpation of power or a clear abuse of discretion," *Walsh*, 15 F.4th at 1008, for the district court to adopt the same conclusion reached by the Third Circuit in a closely analogous case (and by the Eighth Circuit as to the legislator in *In re North Dakota* who was similarly situated to petitioners here).

Perhaps recognizing this, petitioners seek to distinguish *Powell* in various ways. *See* ECF 1 at 14-16. But petitioners cannot prevail simply by distinguishing *Powell* (and *In re North Dakota*), because that would in no way establish that petitioners have—despite the absence of *any* case supporting their view—a "clear and indisputable" right to mandamus.

In any event, petitioners' distinctions of *Powell* (like their distinctions of *In re North Dakota*) lack merit.

First, petitioners say that *Powell* did not find a privilege *waiver*. *See* ECF 1 at 14-15. But that is because (as petitioners admit) *Powell* held that the privilege being claimed did not exist at all. *Id.* That assuredly does not help petitioners, because they are claiming the very privilege *Powell* held did not exist, i.e., "a privilege which would allow [legislators] to … actively participate in this litigation … yet allow them to refuse to comply with … every adverse order." 247 F.3d at 525. Put another way, whether the conclusion is framed as a waiver of the

privilege or the non-existence of the privilege is immaterial. What matters is that courts have disallowed the machinations petitioners are attempting here.

Second, petitioners say that, unlike their *Powell* counterparts, they intervened pursuant to statutory authority. ECF 1 at 15-16. True or not, that is irrelevant. The critical point is that petitioners' intervention as full parties in federal litigation—regardless of the relevant source of authority under state law—was voluntary. As explained, petitioners cite no authority for the proposition that state officials who choose to intervene in federal litigation over claims arising under federal law (whether the intervention is pursuant to state statutory authority or not) can flout both basic fairness and the federal rules regarding discovery that apply to all other litigants. The district court rejected that proposition, D.Ct. Dkt. 535 at 3, and plaintiffs are aware of no contrary authority.

Moreover, while petitioners suggest they *had* to intervene in order to ensure a full defense of the laws, including on appeal, that is wrong. The state attorney general is representing the state's interests in the litigation, opposing most of plaintiffs' challenges. And to the extent petitioners fault the attorney general for not opposing *all* of plaintiffs' challenges, they could have offered their perspective in precisely the way they claim to want to (making only "legal arguments" (ECF 1 at 25)), as amici. This includes on any appeal, whether brought by the attorney general, a plaintiff, or another defendant like the Republican National Committee.

(The RNC—having not waited a year to intervene, as petitioners did, is fully defending the laws and, as petitioners are aware, has already made clear its intent to appeal adverse rulings. *See* D.Ct. Dkt. 557.) Petitioners have only themselves to blame for forgoing the option of participating as amici and thereby avoiding being subjected to party discovery.

The option to participate as amici likewise resolves petitioners' policy argument that the district court's waiver ruling will make "legislative leaders … hesitate to participate in cases attacking the constitutionality of state laws," ECF 1 at 17. In reality, there will be no such hesitation because legislators will know they can almost certainly defend state laws *as amici* without risking a privilege waiver (just as petitioners could have). To the extent legislators might "hesitate" because they could not engage in the deeply unfair conduct of inserting themselves as parties in litigation without being subject to the same discovery obligations that the Federal Rules apply to every other party, that possibility should give this Court no pause whatsoever.[5]

---

[5] Petitioners' stay motion made the related claim that inadequately protecting legislative privilege would "chill legislative debate" and thus "impede [petitioners'] ability to discharge their duties" properly. ECF 2 at 6. *Mohawk* rejected much the same argument, explaining that not protecting the attorney-client privilege in the way urged there (allowing collateral-order appeal of disclosure orders) would not cause any "discernible chill" because "in deciding how freely to speak, clients and counsel are unlikely to focus on the remote prospect of an erroneous disclosure order." 558 U.S. at 110. The same is true here—*a fortiori*, in fact, because even if any legislators or staff *did* "focus on the remote prospect of

Lastly as to *Powell*, petitioners say that it is distinguishable because they have not "sought to turn 'the shield of legislative immunity into a sword.'" ECF 1 at 15. To the contrary, that is exactly what they have done: Petitioners brought themselves into this case voluntarily and brandished a "sword" by disputing one of plaintiffs' central claims, i.e., that the laws were enacted with discriminatory intent—declaring it to be petitioners' "position that the Challenged Laws were not intended to discriminate against any individual on the basis of race or national origin," D.Ct. Dkt. 500-1, Ex. A at 5. Petitioners then raised a "shield" by asserting that plaintiffs could not test that assertion through discovery. That is archetypal "sword-shield" conduct, precisely what this Court en banc rejected in *Bittaker* (*see supra* p.2).

Petitioners contend, however that because they "have not used *privileged* information in their defense, there is no 'sword and shield' problem." ECF 1 at 16 (emphasis added). But as petitioners' own cited decision from this Court says, "[t]he 'overarching consideration' in an implied waiver analysis 'is whether allowing the privilege to protect against disclosure of the information would be

---

[a] … disclosure order" like the one here, *id.*, they would know they could avoid being subject to such an order by not intervening in litigation and making assertions about key disputed facts. Petitioners, moreover, offered no evidence of any "chill" in the decades since *Powell*, further undermining their claim of catastrophe if petitioners have to sit for depositions (as every other state and county defendant has done here). In short, petitioners' chill argument was even weaker than the one *Mohawk* rejected.

manifestly unfair to the opposing party.'" *Id.* (quoting *Home Indemnity Company v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)). Such manifest unfairness is present here, as petitioners have asserted that the challenged laws were not passed with discriminatory intent—an assertion bearing directly on some of plaintiffs' claims—and then insisted that plaintiffs cannot explore that core assertion in discovery. *Powell* correctly held that allowing that would be grossly unfair, as did the district court.

Plaintiffs' stay opposition made all of the same foregoing responses to petitioners' arguments about *Powell*. *See* ECF 4-1 at 9-13. Petitioners' reply ignored most of those responses. Instead, petitioners argued that "a Third Circuit case is not precedent in this Circuit." ECF 5 at 6. That is true—as it is true of the many out-of-circuit cases petitioners rely on—but it does nothing to undermine *Powell*'s similarities to this case or the force of its reasoning.

Petitioners' stay reply also asserted that "*Powell* involved defendants who intervened in their personal capacity (as opposed to their official capacity pursuant to state statute)." ECF 5 at 6-7. That is misleading. As the *Powell* legislators themselves told the Supreme Court in their (unsuccessful) petition for certiorari, they intervened because "under the Pennsylvania Constitution, the General Assembly is responsible for public education in Pennsylvania," such that "any decision in the underlying case … [would] necessarily affect the General Assembly

and its members, and, in particular, the duties of [the intervenors] *as presiding officers*." Pet. for Cert. 5, *Ryan v. Powell*, No. 00-1854, 2001 WL 34125228 (U.S. June 12, 2001) (emphasis added). As *Powell* recounted, therefore, the legislators' motion to intervene there cited their desire to "articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government," 247 F.3d at 522. Finally, petitioners' stay reply stated that the *Powell* legislators sought to take discovery and testify at trial, which petitioners do not. ECF 5 at 7. That does not change the dispositive facts—which were also present in *Powell*—which are that petitioners voluntarily injected themselves in this litigation (to "fully defend" the challenged laws, *supra* p.1), disputed central facts in the case, and then tried to block plaintiffs from exploring petitioners' factual assertions through the discovery authorized by the Federal Rules of Civil Procedure. As *Powell* explained, there is simply no precedent for that one-sided approach to litigation. And that complete lack of case support, again, is why petitioners have no "clear and indisputable" right to mandamus. Far from committing a "judicial usurpation of power," *Walsh*, 15 F.4th at 1008, the district court (like *Powell* and *In re North Dakota* as to the legislator similarly situated to petitioners) was entirely correct to reject petitioners' argument position.

2.      *Petitioners' Relevance Arguments Are Waived And Meritless*

Petitioners alternatively contend that "[w]hether or not [they] waived the legislative privilege the district court erred in allowing their depositions, because their personal motives for approving the Voting Laws are simply irrelevant."  ECF 1 at 17.  That argument cannot show that petitioners have any clear and indisputable right to mandamus, both because the argument was waived below and because it is wrong.

a.      Petitioners' brief below on this issue (D.Ct. Dkt. 499) never asserted that the discovery plaintiffs seek is irrelevant.  Nor did petitioners object to plaintiffs' discovery requests on relevance grounds.  To the contrary, in response to plaintiffs' interrogatory regarding "the purposes of the Challenged Laws," D.Ct. Dkt. 500-1, Ex. A at 4, petitioners averred that they (and their colleagues who voted on the laws) "may have knowledge relevant to the above interrogatory," *id.* at 6.  That bears repeating:  Petitioners stated below that they "may have knowledge relevant to" "the purposes of the Challenged Laws."  Petitioners also separately confirmed that they are "not withholding" documents on relevance grounds.  *Id.* Ex. C at 2.  Petitioners thoroughly waived their relevance argument below.  The argument accordingly cannot support mandamus.[6]

---

[6] Any argument in petitioners' reply that they argued relevance in seeking a *stay* below would be unavailing.  By then, the district court had ruled—and petitioners did not even seek reconsideration of that ruling based on relevance

Plaintiffs' stay opposition made this same waiver argument. *See* ECF 4-1 at 14. And petitioners' reply did not deny the accuracy of any of the arguments in the preceding text paragraph about what they said and didn't say below. Petitioners instead quoted an interrogatory response in which they stated that they could not answer on behalf of other legislators or the legislature as a whole. ECF 5 at 10. But whether petitioners could or could not respond on behalf of others has nothing to do with *relevance*. Indeed, the same interrogatory response from which petitioners quoted stated that petitioners "can … respond to this interrogatory on their own behalf." D.Ct. Dkt. 499 at 5. The interrogatory response, in fact, confirms petitioners' waiver, as petitioners directly addressed the question of legislative intent, *without* asserting any specific relevance objection, stating that "[i]t is the Speaker['s] and the President's position that the Challenged Laws were not intended to discriminate against any individual on the basis of race or national origin." *Id.* Again, then, petitioners' waiver of relevance below is crystal clear.

b.     In any event, petitioners' relevance argument fails. As petitioners themselves say (quoting Supreme Court precedent), "Plaintiffs claim the Voting Laws violate" equal protection, "and '[p]roof of racially discriminatory intent or purpose' is required to show such a violation." ECF 1 at 23 (alteration in original)

---

arguments. First presenting those arguments in a stay motion was too late. *See* D.Ct. Dkt. 544 at 7.

(quoting *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265 (1977)).  The Arizona legislature's "intent or purpose" in enacting the challenged laws (*id.*) is thus unquestionably relevant.

Recognizing this, petitioners persistently argue as though plaintiffs sought in discovery to inquire only about their "personal motives."  ECF 1 at 1, 10, 17, 24-25.  That is wrong.  For example, of the four interrogatories plaintiffs sent petitioners, *not one* asked about any legislator's personal motives.  Plaintiffs instead asked about matters such as "the purposes of the Challenged Laws" and "instance[s] in which the Arizona Legislature has established that a non-U.S. citizen has registered to vote in Arizona."  D.Ct. Dkt. 500-1, Ex. A, at 4, 6; *see also id.* Ex. F (similar for the nine topics included in a draft deposition notice sent to petitioners).  Put simply, petitioners' extended arguments regarding "personal motives"—arguments that are essential to their mandamus request—do nothing to show any error by the district court, much less the clear error required for mandamus, because the discovery petitioners seek to avoid is largely *not* about their (or any legislator's) personal motives.  This point—as well as petitioners' waiver of their relevance argument—distinguishes this case from those petitioners cite regarding relevance.

Plaintiffs' stay opposition made this same argument.  *See* ECF 4-1 at 14-15.  In response, petitioners' reply simply repeated that "the testimony of one or two

legislators … cannot prove collective intent," ECF 5 at 10. That is entirely

unresponsive; as just stated, the discovery petitioners seek to avoid is largely *not*

about their (or any legislator's) personal motives. Petitioners' failure to offer any

actual response underscores the infirmity of their "personal motives" argument. In

any event, discovery is not limited to facts that "prove" a disputed fact; rather,

discovery is permitted into "any matter relevant to any party's claim or defense,"

Fed. R. Civ. P. 26(b)(1), with relevance broadly construed.

> 3. *The Petition Offers No Challenge To An Alternative Ground On Which The District Court's Order Can Be Upheld, Namely That Petitioners' Qualified Privilege Is Overcome*

a. In their motion to compel below, plaintiffs argued (D.Ct. Dkt. 500 at

7-9) that ordering petitioners to provide discovery was warranted even if legislative

privilege had *not* been waived, because that qualified privilege was overcome here

under a five-factor test courts often employ, *see, e.g.*, *Mi Familia Vota v. Hobbs*,

\_\_\_ F.Supp.3d \_\_\_, 2023 WL 4595824, \*9 (D. Ariz. July 18, 2023) ("*MFV*"). The

district court did not need to reach that argument given its waiver ruling. *See* D.Ct.

Dkt. 535 at 5 n.1. But because the argument was raised below, it provides a valid

basis to uphold the court's discovery order. *See, e.g.*, *Dahda v. United States*, 138

S.Ct. 1491, 1498 (2018). Yet their petition never even *mentions* the argument, let

alone explains why it is insufficient to sustain the challenged order. That is likely

because petitioners below waived any argument regarding application of the five-

factor test, by wholly failing to argue it. (They then sought to rectify their waiver by asking the district court for permission to file a supplemental brief arguing the five-factor test. D.Ct. Dkt. 506. The court denied that request, D.Ct. Dkt. 517, thereby cementing petitioners' waiver.) But regardless of whether it was waived below, petitioners cannot satisfy the high mandamus standard when the challenged order is sustainable on a basis petitioners have not challenged in *this* Court. Indeed, petitioners' own leading case, the Eighth Circuit's decision in *In re North Dakota*, makes that clear: The court of appeals denied mandamus as to one legislator (Jones) on the ground that "Jones—having declined even to challenge an independent ground for the district court's order regarding his subpoena—has not demonstrated a clear and indisputable right to relief." 70 F.4th at 465.

Plaintiffs' stay opposition made this same argument. *See* ECF 4-1 at 15-16. In response, petitioners' reply pointed only to filings they made *below*, in an effort to show that they did not waive the issue in the district court. Those filings show no such thing, but regardless it does not matter. What matters (and what petitioners cannot deny) is that they made no challenge to the alternative ground *in their mandamus petition*. As explained, that failure means that (as *In re North Dakota* shows) they have "not demonstrated a clear and indisputable right to relief." 70 F.4th at 465.

b.     Waiver aside, applying the five factors shows that the qualified legislative privilege is overcome here.  Those factors are: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of government in the litigation; and (v) the purposes of the privilege."  *MFV*, 2023 WL 4595824, at *8.

*Relevance*.  As courts have recognized in prior constitutional challenges to Arizona legislation, materials related to the legislative process are highly relevant to establishing whether the legislature acted with a discriminatory intent or purpose.  *See Sol v. Whiting*, 2013 WL 12098752, at *3 (D. Ariz. Dec. 11, 2013) (citing *Village of Arlington Heights*, 429 U.S. at 268).  In one case, for example, the court reasoned that communications between legislators and third-party advisors "likely … contain admissible evidence or lead to the discovery of admissible evidence of those legislators' intent in drafting and supporting [the legislation] as contemporary statements by members of the decisionmaking body." *Id.* (quotation marks omitted).  Similarly, the court in another similar case—though ultimately holding the privilege not overcome where the legislators were not parties—found that the relevance factor favored disclosure because "[w]hat motivated the Arizona legislature to enact [the challenged law] is at the heart of this litigation."  *MFV*, 2023 WL 4595824, at *10.  Indeed, the relevance here is so

clear that petitioners, as noted, did not assert relevance as a basis for resisting

production, and affirmatively stated that they may have evidence relevant to the

legislators' intent in passing the challenged laws. *See supra* pp.16-17.

*Alternative evidence*. Petitioners repeatedly touted their "unique" interests

and perspective as a basis for intervention. D.Ct. Dkt. 348 at 2, 11, 13. By

definition, "unique" information cannot be obtained elsewhere.

*Seriousness of the litigation*. There can be no dispute over the seriousness

of the issues here. As a district judge recently noted in another Arizona election-

law challenge, "[t]he federal interest in protecting voting rights is a serious one,"

and "the right to be free from discrimination on the basis of race is a vital

constitutional right." *MFV*, 2023 WL 4595824, at *10. Indeed, the legislators in

that case rightly conceded that the third factor favored disclosure.

*Role of government*. Courts have differed in their application of this factor.

Some have deemed it "inapt in the legislative privilege context." *MFV*, 2023 WL

4595824, at *12. Others have found that it favors disclosure where a plaintiff's

allegations "rais[e] serious charges about the fairness and impartiality of some of

the central institutions of our state government" or where "legislative immunity is

not under threat," *id.*—considerations that likewise favor disclosure here. Still

others have found the factor weighs against disclosure where state officials sought

to protect the legislative process from "unwarranted intrusion" or to "uphold the

validity of the challenged legislation." *Id.* Here there is no "unwarranted intrusion," as petitioners voluntarily intervened as full-party defendants. And this is not a case in which state officials seek to "uphold … challenged legislation" as a matter of law; petitioners intervened to defend the laws on the facts, asserting that the challenged laws "were not intended to discriminate against any individual on the basis of race or national origin." D.Ct. Dkt. 500-1, Ex. A at 5. No matter its proper interpretation, then, the fourth factor favors disclosure.

***Purpose of the privilege***. Plaintiffs recognize that legislative privilege serves important purposes, including "protect[ing] confidential communications between lawmakers and their staff." *MFV*, 2023 WL 4595824, at \*12. But petitioners' interest in protecting the confidentiality of their communications or the substance of their debates should yield where, as here, they put such matters directly at issue through their intervention and affirmative participation in the defense of this case.

In short, this is not a close call; all five factors weigh in favor of disclosure. And again, petitioners make no argument *in their petition* regarding the five factors. (Nor, if it would matter, did they do so in the stay motion.) Any such argument cannot be made for the first time in reply. And because application of the five-factor test suffices to support the challenged discovery order, petitioners'

failure to address it means they cannot show any likelihood of satisfying the stringent mandamus standard.

Plaintiffs' stay opposition made the foregoing arguments about the five factors. *See* ECF 4-1 at 16-19. In response, petitioners' stay reply argued that "neither the Ninth Circuit nor the Supreme Court ha[s] approved the use of the five-factor balancing test." ECF 5 at 11. But if petitioners wanted to raise that as a challenge to the alternative ground for the district court's order, they needed to raise it *in the mandamus petition*. No such argument appears there; the petition never even mentions the five-factor test, much less challenges it as invalid (and even less presents a proper analysis of how all five factors compel the conclusion that the legislative privilege is not overcome here). That, again, is the dispositive point: Petitioners cannot obtain the extraordinary remedy of mandamus when there is an alternative ground for the challenged order that the petition never even acknowledges, let alone addresses.

    4.   *Application Of The* Bauman *Factors Confirms That Mandamus Is Unavailable Here*

Petitioners argue (ECF 1 at 7-23) that mandamus is warranted under the five so-called *Bauman* factors that this Court considers in evaluating a mandamus request. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (citing *Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977)). While that

would be irrelevant even if it were true—given all the arguments offered above—it is not true.[7]

The first two *Bauman* factors are whether a petitioner "has other adequate means … to attain the relief … desire[d]" and "will be damaged or prejudiced in a way not correctable on appeal." *Walsh*, 15 F.4th at 1008. As explained in more detail below, *see* pp.28-30, petitioners can "attain the relief" they desire (preventing disclosure of privileged information) and avoid being "damaged or prejudiced in a way not correctable on appeal," *Walsh*, 15 F.4th at 1008, by following a path the Supreme Court has repeatedly laid out: declining to comply with the challenged discovery order and appealing any sanctions or contempt ruling. Although petitioners recognized that option in the stay motion they filed together with their mandamus petition, *see* ECF 2 at 5, 11, they ignore it in the petition itself, baldly declaring that absent mandamus, "Plaintiffs will be able to use the documents provisionally produced … and [petitioners] will be required to submit to depositions," ECF 1 at 10. That is untrue for the reason just given—and so both of the first two *Bauman* factors weigh against mandamus.

The third *Bauman* factor is "whether the district court's order is clearly erroneous as a matter of law." *Walsh*, 15 F.4th at 1008. For the reasons given

---

[7] Plaintiffs preserve for further review the argument that the *Bauman* factors conflict with Supreme Court precedent regarding the requirements for mandamus (and, to the extent of that conflict, cannot be used even as guidelines).

already, that high standard is not met here.  Again, *not one case* rejects the district court's view that legislators waive legislative privilege by choosing to intervene in a case and make assertions about core disputed facts—and the Third Circuit took the same view in the analogous case of *Powell*, as did the Eighth Circuit in *In re North Dakota* (as to the legislator who was similarly situated to petitioners). Moreover, even if there were no waiver, the qualified privilege has been overcome here under the commonly employed five-factor test; that independently suffices to refute any claim that the district court committed any clear error.

Petitioners rightly do not argue—and therefore have waived any argument— that the fourth *Bauman* factor ("whether the district court's order makes an 'oft-repeated error,' or 'manifests a persistent disregard of the federal rules,'" *Walsh*, 15 F.4th at 1008) supports mandamus.

Petitioners argue that the "fifth *Bauman* factor … supports mandamus because this Court has never ruled on the precise issue presented here."  ECF 1 at 22.  But petitioners themselves cite this Court's precedent recognizing that where legislative intent is relevant (as petitioners admit it is here, *id.* at 23), legislators' testimony can sometimes be warranted, subject to any privileges.  *Id.*  The *issues* here are thus not ones of first impression; what petitioners claim is novel is the *application* of settled law to "the facts of this case."  *Id.*  But the fifth *Bauman* factor asks whether there are "legal issues of first impression."  *Walsh*, 15 F.4th at

1008. That is unsurprising: *Every* case's facts are unique. If new facts sufficed to support mandamus, that "drastic and extraordinary" remedy, *Fahey*, 332 U.S. at 259-260, would be commonplace.

In short, all five *Bauman* factors weigh against mandamus.

Plaintiffs' stay opposition offered these same arguments about all five *Bauman* factors. ECF 4-1 at 19-21. In response, petitioners' reply said—nothing. Petitioners did not address the factors *at all*, beyond the wholly conclusory claim that their petition "discusses the five *Bauman* factors and establishes why the Legislators are likely to prevail in showing that mandamus is warranted." ECF 5 at 6. That of course does nothing to respond to the detailed arguments provided in the opposition (and above) for why the five factors confirm that mandamus is *un*warranted.

*     *     *

For the myriad independent reasons laid out above, petitioners cannot show the required "clear and indisputable" right to mandamus, *Miller*, 530 U.S. at 339: No case supports their position, their relevance arguments are waived and meritless, the district court's decision can rest on an alternate ground that the petition never challenges, and the *Bauman* factors weigh against relief.

**B.**     **Petitioners Cannot Show That They Have No Adequate Alternative Means To Attain The Desired Relief**

The Supreme Court has held that mandamus is unavailable unless the petitioner can show it "ha[s] no other adequate means to attain the relief … desire[d]." *Kerr*, 426 U.S. at 403. Petitioners cannot make this showing. That provides an independent basis to deny their petition.

The petition asserts that "[u]nless the Legislators can appeal as of right under the collateral order doctrine, they have no other adequate means of relief than mandamus." ECF 1 at 8. Petitioners are correct in surmising that they cannot appeal as of right under the collateral-order doctrine, but they are wrong in asserting that they have no other adequate means of relief. In fact, the Supreme Court has made clear that a party faced with an order to disclose purportedly privileged information can "obtain postjudgment review *without* having to reveal its privileged information," via what the Court called a "long-recognized option," namely to "defy a disclosure order and incur court-imposed sanctions" or "contempt," and then "appeal … from that ruling." *Mohawk*, 558 U.S. at 111 (emphasis added) (citing cases); *accord, e.g.*, *United States v. Ryan*, 402 U.S. 530, 533 (1971) (a party subject to a discovery order "is free to refuse compliance and, … in such event, he may obtain full review of his claims *before* undertaking any burden of compliance" (emphasis added)). The availability of that "long-

- 28 -

recognized option," *Mohawk*, 558 U.S. at 111, means petitioners cannot show the absence of an adequate alternative that is required for mandamus.

Plaintiffs' stay opposition made this same point (in explaining why petitioners would suffer no irreparable harm from the denial of a stay). ECF 4-1 at 5 & n.3. In response, petitioners' reply rhetorically asked: "Does the Court really want to encourage state officials to ignore federal court orders in order to seek relief?" ECF 5 at 6. As just explained, the Supreme Court has already answered that question, holding that not complying with an order to disclose allegedly privileged information and then appealing any resulting sanctions and/or contempt is a firmly established mechanism. To the extent petitioners' argument sought an exception to that mechanism for government officials, this Court and many others have rejected such an exception. Indeed, this Court did so in a case involving a government entity that was not a party to the underlying litigation, and thus had a stronger argument for an exception because it could not "obtain review of its objection to discovery by appealing from a final judgment in the underlying action." *Newton v. National Broadcasting Company*, 726 F.2d 591, 594 (9th Cir. 1984) (per curiam). Nonetheless, this Court rejected the entity's request "to hold that a discovery order directed against a ... governmental entity is appealable in the absence of a contempt citation where the governmental entity raises a defense of governmental privilege," *id.* at 593. Other circuits' case law is in accord, holding

that although the Supreme Court held in *United States v. Nixon*, 418 U.S. 683 (1974), that the president need not submit to contempt proceedings to obtain judicial review, *see id.* at 691-692, that carve-out arose from the "unique context of [the] case," *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 914 (8th Cir. 1997), and does not apply to other "government officials[]" or agencies, *Bennett v. City of Boston*, 54 F.3d 18, 20-21 (1st Cir. 1995) (collecting cases). In other words, "generalized arguments that it would be unseemly to require state officials to adhere to" the contempt-appeal route are unavailing. *Simmons v. City of Racine, PFC*, 37 F.3d 325, 328 (7th Cir. 1994).[8]

Because petitioners have a well-established alternate route to obtaining the relief they desire, mandamus is unavailable.

## C.    Mandamus Is Not "Appropriate Under The Circumstances"

Even if a petitioner shows both a clear and indisputable right to mandamus and the absence of any adequate alternative remedy, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the

---

[8] The foregoing cases likewise answer petitioners' reliance on the First Circuit's statement that "the ordinary course of perfecting an appeal by incurring a contempt order is sometimes 'less readily available' to state actors than to private parties," *American Trucking Associations v. Alviti*, 14 F.4th 76, 85 (1st Cir. 2021), *quoted in* ECF 5 at 3-4. As just shown, the First Circuit *rejects* any government-entity carve-out from the established route of avoiding disclosure of allegedly privilege information by incurring sanctions or contempt and then appealing. In any event, petitioners offered no basis to conclude that that approach is "less readily available" (*id.*) to them.

circumstances." *Cheney v. U.S. District Court*, 542 U.S. 367, 381 (2004).

Petitioners cannot satisfy this third requirement any more than they can either of

the first two.

For starters, mandamus is not appropriate under the circumstances because,

as discussed, petitioners voluntarily intervened as full parties and then made

factual assertions about a core issue in the case. Having done that, they have no

credible claim to equitable relief from discovery regarding those assertions.

Mandamus is also not appropriate for two additional reasons. First, it would

reward the legislators' repeated efforts to delay this litigation, *see supra* pp.5-6 &

n.3, despite the importance of the litigation proceeding quickly so that Arizona's

2024 elections can be conducted without any uncertainty about the validity and

applicability of the challenged laws. Second and relatedly, mandamus is not

appropriate because it would interfere with the district court's ability to fully

evaluate plaintiffs' claims that the challenged laws violate the Constitution and

infringe the fundamental right to vote of many thousands of Arizona residents.

### D. Responses To The Motions Panel's Order

The motions-panel majority's order stated that this response "should address

the scope and application of legislative privilege, the conditions under which a

legislator waives the privilege, particularly under A.R.S. § 12-1841, and the

relevance of the requested information to the constitutionality of the challenged

Voting Laws." ECF 9 at 2. Plaintiffs submit that to the extent those questions bear on petitioners' mandamus request, they are addressed above. But in the interest of ensuring complete responsiveness to the motions-panel majority's direction, plaintiffs provide the following additional answers.

     *1.*     *The Scope And Application Of Legislative Privilege*

Because plaintiffs have not argued in this case that the information at issue is categorically unprotected by legislative privilege, the privilege's scope has not been a topic of dispute. *See* ECF 1 at 1. Plaintiffs agree with petitioners that, generally speaking, it "applies where legislators or their aides were 'acting in the sphere of legitimate legislative activity.'" *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).

Plaintiffs are unsure about the meaning of the motions-panel majority's reference to the "application of legislative privilege." ECF 9 at 2. To the extent it differs from scope, plaintiffs' response is that the legislative privilege is "qualified" (unlike, say, the attorney-client privilege at issue in *Mohawk*), "and must therefore depend on a balancing of the legitimate interests on both sides." *In re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987); *accord, e.g.*, *Jefferson Community Health Care Centers, Inc. v. Jefferson Parish Government*, 849 F.3d 615, 624 (5th Cir. 2017). As discussed, courts have often conducted that balancing

by applying a five-factor test—which here supports the conclusion that the privilege is overcome. *See supra* pp.19-24.

>    2.    *The Conditions Under Which A Legislator Waives Legislative Privilege*

This Court need not adopt any bright-line rule regarding when legislative privilege is waived, nor explore the precise circumstances in which it is and is not waived. The Court need (and should) resolve only whether it was "a judicial usurpation of power or a clear abuse of discretion," *Walsh*, 15 F.4th at 1008, for the district court to conclude that when legislators voluntarily insert themselves into litigation and make assertions about a critical contested factual issue, they have waived privilege to the extent necessary to provide the other side a fair opportunity to explore those assertions. Any broader ruling or statements regarding waiver are particularly unwarranted in a case that lacks full briefing, that is being briefed and argued on a highly expedited basis (while the parties are preparing for and then participating in the trial in the underlying litigation), and in which there is little or no opportunity for participation by amici.

In directing plaintiffs to address the circumstances under which legislative privilege is waived, the motions-panel majority cited Arizona Revised Statutes §12-1841. *See* ECF 9 at 2. In pertinent part, that statute provides—as a matter of state law—that where a lawsuit challenges the constitutionality of an Arizona statute, "the speaker of the house of representatives or the president of the senate

- 33 -

… [1] may intervene as a party, [2] may file briefs in the matter or [3] may choose not to participate."  Although the legislators pervasively invoke that statute, their reliance on it is misplaced.

For starters, petitioners offer no basis to conclude that the statute even applies to federal cases—and the text indicates otherwise.  For example, the statute requires courts to take certain steps in enumerated circumstances, *see* §12-1841(C), which states are not empowered to do vis-à-vis federal courts.

In any event, the language quoted above from the statute confirms the point made earlier (*see supra* p.11-12), that §12-1841 provides no support for the notion that petitioners had to intervene in order to defend the challenged laws in the way they say they want to, i.e., only making "legal arguments," ECF 1 at 25.  It provides no support because the quoted language shows that (to the extent the law has any relevance to federal-court proceedings), it provides Arizona's legislative leaders with state-law authorization to simply "file briefs in the matter" or "not to participate" at all.  Ariz. Rev. Stat. §12-1841.  In other words, it is not a (state-law) mandate to intervene, but (state-law) authorization to pursue any of three options.

More fundamentally, as a state statute, §12-1841 does not affect when legislative privilege is waived in *federal* court as to a *federal* claim.  Privileges in federal court are governed by Federal Rule of Evidence 501, which provides that "state law governs privilege" only "in a civil case," and only as to "a claim or

- 34 -

defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

Where that exception does not apply (as here), the rule provides that "[t]he

common law—as interpreted by United States courts in the light of reason and

experience—governs a claim of privilege unless any of the following provides

otherwise:

- the United States Constitution;
- a federal statute; or
- rules prescribed by the Supreme Court."

*Id.* State laws like §12-1841 therefore have no bearing on when legislative

privilege is waived as to a federal claim in federal court.

### 3. The Relevance Of The Requested Information To The Constitutionality Of The Challenged Laws

As discussed, *see supra* pp.17-18, the discovery at issue—which is not about

the personal motives of petitioners or any other legislators—is relevant to

plaintiffs' claim that the challenged laws violate equal protection. As petitioners

say (quoting Supreme Court precedent), "'[p]roof of racially discriminatory intent

or purpose' is required to show such a violation." ECF 1 at 23 (alteration in

original) (quoting *Village of Arlington Heights*, 429 U.S. at 265).

## CONCLUSION

The petition for a writ of mandamus should be denied and the stay lifted as soon as possible, *see supra* p.4.

October 20, 2023                                     Respectfully submitted,

                                                     /s/ Daniel S. Volchok

BRUCE SAMUELS                                        SETH P. WAXMAN
JENNIFER LEE-COTA                                    CHRISTOPHER E. BABBITT
PAPETTI SAMUELS WEISS                                DANIEL S. VOLCHOK
    MCKIRGAN LLP                                     BRITANY RILEY-SWANBECK
16430 North Scottsdale Road                          WILMER CUTLER PICKERING
Suite 290                                                HALE AND DORR LLP
Scottsdale, Arizona 85254                            2100 Pennsylvania Avenue N.W.
(480) 800-3530                                       Washington, D.C. 20037
bsamuels@pswmlaw.com                                 (202) 663-6000
                                                     daniel.volchok@wilmerhale.com
KELSEY QUIGLEY
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, California 94306
(650) 858-6000
kelsey.quigley@wilmerhale.com

*Counsel for the Democratic National Committee and the Arizona Democratic Party*[*]

---

[*] All non-U.S. plaintiffs join in this opposition.

## CERTIFICATE OF COMPLIANCE

This opposition complies with the applicable provisions of both the Federal Rules of Appellate Procedure and this Court's rules in that: (1) according to the word-count feature of the word-processing system used to generate the opposition (Microsoft Word), the opposition contains 8,399 words, excluding the portions exempted from the count by the rules, and (2) the opposition has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK