**No. 23-70179**

---

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

In re BEN TOMA, Speaker of the Arizona House of Representatives, in his official capacity; WARREN PETERSEN, President of the Arizona Senate, in his official capacity.

---

BEN TOMA, Speaker of the Arizona House of Representatives, in his official capacity; WARREN PETERSEN, President of the Arizona Senate, in his official capacity,

Intervenor-Defendants-Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, PHOENIX,

Respondent,

MI FAMILIA VOTA; et al.,

Real Parties in Interest.

---

On Petition for a Writ of Mandamus to the United States District Court, District of Arizona-Phoenix
Case No. 2:22-CV-00509-SRB

---

## REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS

---

Kevin E. O'Malley (Bar No. 006420)
Hannah H. Porter (Bar No. 029842)
Mark C. Dangerfield (Bar No. 010832)

GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000
kevin.omalley@gknet.com
hannah.porter@gknet.com
mark.dangerfield@gknet.com
*Counsel for Petitioners*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

I.   The *Bauman* Factors Support Mandamus on the Facts Here. ........................2

   A.  Petitioners have no other adequate means of relief and, absent mandamus, will be prejudiced in a way not correctable by appeal. ................................3

   B.  The district court's order was clearly wrong as a matter of law. ................5

      1.  *Powell* is nothing like this case. ................................................5

      2.  *In re North Dakota Legislative Assembly* contradicts, not supports, the district court's order. ................................................................7

      3.  The district court clearly erred in holding that the Legislators "put their own motives" at issue. ................................................................8

      4.  The district court clearly erred by failing to evaluate whether the non-U.S. Plaintiffs were deprived of "vital" information to prove the legislature's discriminatory intent. ........................................................12

   C.  The district court's order raises an issue of first impression. ....................14

II.  Non-U.S. Plaintiffs' Miscellaneous Arguments Are Not Well-Taken. .........15

   A.  The Legislators Timely Intervened and Have Participated in Discovery..15

   B.  The District Court Did Not Address Plaintiffs' Newly Raised Argument Regarding the Five-Factor Balancing Test. ................................................17

   C.  The Legislators Have Consistently Asserted that They Could Not Offer Testimony Relevant to the Legislature's Collective Intent. ......................19

   D.  The Legislators' Statutory Authority to Intervene Applies in Federal Court as Well as State Court. ................................................................20

CONCLUSION ......................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'ns, Inc. v. Alviti*,
14 F.4th 76 (1st Cir. 2021)....................................................................4

*Bauman v. United States District Court*,
557 F.2d 650 (9th Cir. 1977) ................................................2, 3, 5, 14

*Berger v. N. Carolina State Conf. of the NAACP*,
142 S. Ct. 2191 (2022)...........................................................................7

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ...................................................1, 12, 13

*Brnovich v. Democratic Nat'l Comm.*,
141 S. Ct. 2321 (2021)..........................................................................10

*City of Las Vegas v. Foley*,
747 F.2d 1294 (9th Cir. 1984) .............................1, 2, 3, 4, 5, 8, 9, 15

*Fletcher v. Peck*,
8 Cranch 87, 3 L.3d. 162, ..................................................................9, 10

*Hernandez v. Tanninen*,
604 F.3d 1095 (9th Cir. 2010) ..............................................................5

*Home Indem. Co. v. Lane Powell Moss & Miller*,
43 F.3d 1322 (9th Cir. 1995) ..............................................................13

*In re Kellogg Brown & Root, Inc.*,
756 F.3d 754 (D.C. Cir. 2014)...............................................................5

*In re Kelly*,
841 F.2d 908 (9th Cir. 1988) ................................................................9

*In re North Dakota Legislative Assembly*,
70 F.4th 460 (8th Cir. 2023) ................................................5, 7, 8, 18

iii

*In re Grand Jury Proc.*,
219 F.3d 175 (2d Cir. 2000) ...............................................................13

*Isaacson v. Mayes*,
No. CV-21-01417-PHX-DLR, 2023 WL 2403519 (D. Ariz. Mar. 8,
2023) ...................................................................................................20

*La Union Del Pueblo Entero v. Abbott*,
68 F.4th 228 (5th Cir. 2023) .........................................................18, 19

*Lee v. City of Los Angeles*,
908 F.3d 1175 (9th Cir. 2018) ...........................................8, 9, 18, 19

*Mohawk Industries, Inc. v. Carpenter*,
558 U.S. 100 (2009)........................................................................4, 5

*Newton v. National Broadcasting Co*,
726 F.2d 591 (9th Cir. 1984) ...............................................................5

*Perry v. Schwarzenegger*,
591 F.3d 1147 (9th Cir. 2010) ..............................................................4

*Powell v. Ridge*,
247 F.3d 520 (3d Cir. 2001) ............................................................5, 6

*Puente Arizona v. Arpaio*,
314 F.R.D. 664 (D. Ariz. 2016) ..........................................................19

*Soon Hing v. Crowley*,
13 U.S. 703 (1885)................................................................................1

*Tenney v. Brandhove*,
341 U.S. 367 (1951)..............................................................................9

*United Sates v. Amlani*,
169 F.3d 1189 (9th Cir. 1999) .............................................................13

*Va. Uranium, Inc. v. Warren*,
___ U.S. ___, 139 S. Ct. 1894, 1907-08 (2019) ................................20

*Village of Arlington Heights v. Metropolitan Hosing Development
Corp.*,
429 U.S. 252 (1977)..........................................................9, 10, 15, 18

iv

**Statutes**

A.R.S. § 12-1841....................................................................6, 7, 15, 16, 20

**Other Authorities**

Fed. R. Evid. 602 ........................................................................12

## INTRODUCTION

The district court's discovery order challenged in this Petition held that the "Speaker [of the Arizona House] and the President [of the Arizona Senate] have waived their legislative privilege *as to information about their motives* for the Voting Laws." Doc. 535 at 9:4-5 (emphasis added). Yet non-U.S. Plaintiffs' Opposition utterly fails to explain why obtaining information about the personal motives of Speaker Toma and President Petersen (the "Legislators") in voting for the Voting Laws is "vital" to proving the *legislature's* intent in enacting those laws. *See Bittaker v. Woodford,* 331 F.3d 715, 720 (9th Cir. 2003) (holding that "courts must evaluate whether allowing the privilege would deny the opposing party access to information vital to its defense").

And that serous omission is coupled with the Opposition's equally serious failure to address any of the many cases *barring* "inquiry into the motives of legislators," because—in this Court's words, quoting with approval the U.S. Supreme Court—"the diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile." *City of Las Vegas v. Foley,* 747 F.2d 1294, 1297 (9th Cir. 1984) (quoting *Soon Hing v. Crowley,* 13 U.S. 703, 710-11 (1885)).

Merely intervening in the lawsuit—as expressly authorized by Arizona statute—and denying that the *Arizona legislature* passed the Voting Laws with

1

discriminatory intent, did not impliedly waive the Legislators' legislative privilege as to "information about their motives" in voting on those laws. Indeed, this Court made it clear in *Foley* that the motives of individual legislators for supporting a statute are not pertinent to the collective legislative intent.

Finally, even though Plaintiffs now say the discovery they seek is "largely *not* about" the Legislators' "personal motives," Opp. at p. 18, that is the sole subject the district court found had been waived. Doc. 535 at 9:4-5. And as to other topics Plaintiffs identified as ones they wanted to ask about, the district court's discovery order found they were all protected by the legislative privilege. Doc. 535 at 8:2-3. ("And Plaintiffs' proposed deposition topics concern legitimate legislative activities that fall within the scope of the legislative privilege.") (cleaned up).

## I. The *Bauman* Factors Support Mandamus on the Facts Here.

As set forth in the Petition, the Court uses the five *Bauman* factors as guidelines to assess the propriety of mandamus, *see Bauman v. United States District Court,* 557 F.2d 650 (9th Cir. 1977), and factors 1, 2, 3 and 5 support mandamus here. Apparently not liking those factors, though, non-U.S. Plaintiffs spend most of their Opposition arguing that Petitioners can't show a "clear and indisputable right" to mandamus. The point of the *Bauman* factors, however, is to translate that vague standard into more workable guidelines, and those guidelines support mandamus on the facts set forth in the Petition.

The Opposition spends only a few pages discussing the *Bauman* factors (Opp. pp. 24-27), and their arguments miss the mark.

### A.    <u>Petitioners have no other adequate means of relief and, absent mandamus, will be prejudiced in a way not correctable by appeal.</u>

As to the first two factors (whether petitioners have no adequate means of relief and whether they will be prejudiced in a way not correctable on appeal), non-U.S. Plaintiffs blithely claim that the Legislators need only refuse to comply with the district court's order. Opp. p. 25. Then, when the district court sanctions them or finds them in contempt, they can just appeal. But if—contrary to common sense—refusing to comply and allowing oneself to get sanctioned or found in contempt were considered an "adequate" means of relief from a discovery order, then mandamus would *never* be appropriate. *Foley* and other cases prove to the contrary.

In *Foley,* plaintiff argued that it was allowed "to depose city officials to determine their 'motives' for enacting" a challenged zoning ordinance. 747 F.2d at 1296. The city applied to this Court for a writ of mandamus after it was denied a protective order. This Court, citing the *Bauman* factors, found mandamus appropriate, noting that a "discovery order, unlike a final order, is interlocutory and non-appealable…." *Id.* at 1297. "Mandamus review," the Court said, "has been held to be appropriate for discovery matters which otherwise would be reviewable only on direct appeal after resolution on the merits." *Id.*

The Court made no mention of the "remedy" of subjecting oneself to sanctions or being held in contempt by refusing to obey the discovery order. Indeed, the Court in *Foley* specifically forbade what the district court here allowed – inquiry into the motives of individual legislators – "recogniz[ing] that such inquiries are a hazardous task. Individual legislators may vote for a particular statute for a variety of reasons." *Id*. Despite *Foley*'s obvious relevance, the Opposition oddly fails to even mention it, let alone discuss it.

The Opposition also cites to *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100 (2009) to show that a party may pursue an appeal by defying a disclosure order and incurring court-imposed sanctions or a contempt citation. 558 U.S. at 111.[1] But *Mohawk* also supports the use of a writ of mandamus in appropriate circumstances, particularly when a disclosure order amounts to a "judicial usurpation of power," or a "clear abuse of discretion," or "otherwise works a manifest injustice." *Id.* The district court's order meets those circumstances.

Furthermore, after *Mohawk*, this Court has continued to recognize the irreparable harm that arises from disclosure of privileged material. *See Perry v.*

---

[1] *Mohawk* expressly declined to express any view regarding governmental privileges. 558 U.S. at 113 n. 4. The legislative privilege raises concerns about legislative independence and federalism not applicable to the attorney-client privilege. *See, e.g., Am. Trucking Ass'ns, Inc. v. Alviti,* 14 F.4th 76, 85 (1st Cir. 2021) (granting advisory writ of mandamus to bar legislator depositions, noting that the discovery order "raises important questions about the appropriate balance of power between the states and the federal government").

*Schwarzenegger,* 591 F.3d 1147, 1158 (9th Cir. 2010); *Hernandez v. Tanninen,* 604 F.3d 1095, 1101 (9th Cir. 2010); *cf. In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (noting that "*Mohawk* explicitly preserved mandamus review in some cases" involving the attorney-client privilege and holding that "the first condition for mandamus—no other adequate means to obtain relief—will often be satisfied in attorney-client privilege cases").[2]

**B.     The district court's order was clearly wrong as a matter of law.**

As to the third *Bauman* factor, clear error, the Opposition claims that "not one case rejects" the district court's view that "legislators waive legislative privilege by choosing to intervene in a case and make assertions about core disputed facts." Opp. at 26. But we can easily reverse the statement: "not one case" has ever *adopted* such a view. Certainly, the only two cases the Opposition cites on this point—*Powell* and *In re North Dakota*—don't do so.

1.     *Powell* is nothing like this case.

To begin with, *Powell v. Ridge*, 247 F.3d 520, 525 (3d Cir. 2001), is a Third Circuit case that did not assess an implied *waiver* of privilege, but whether a

---

[2] The Opposition also cites *Newton v. National Broadcasting Co,* 726 F.2d 591 (9th Cir. 1984) for its argument that defying a discovery order and being held in contempt is the proper method to appeal a discovery order. That case, however, did not involve a mandamus petition as does this case and *Foley*. Moreover, if the Legislators allowed themselves to be held in contempt and then appealed, that would surely delay resolution of the case for at least an additional year or more.

privilege even existed. In *Powell,* the defendants sought to "seek discovery, but not respond to it; take depositions, but not be deposed; and *testify at trial, but not be cross-examined*." 247 F.3d at 525 (emphasis added). In light of those facts, the *Powell* court said, "they assert a privilege that does not exist." *Id.*

But those are not the facts here. First, unlike *Powell,* the Speaker and the President have *not* sought discovery or noticed depositions, and they *have* responded to discovery, producing more than 90,000 pages of documents and responding to interrogatories. *See* Doc. 499. They have withheld some documents based on privilege, as itemized on their privilege log. And they have declined to be deposed to preserve the legislative privilege.

And unlike *Powell,* the Speaker and President have not sought to offer testimony at trial but not be cross-examined. They will offer no testimony at trial.

Moreover, unlike *Powell,* the Legislators here intervened in their official capacity as of right pursuant to state statute. And the only facts the Legislators will rely on to show legislative intent are the public facts disclosed in the case—the same facts they could have relied on had they filed briefs instead of intervening, as A.R.S. § 12-1841 allowed them to do. But had the Legislators not intervened, they could not have protected their right of appeal.

Even if another defendant, such as the attorney general or the Republican National Committee (RNC) may, or even likely will, appeal, there is simply no

guarantee that another defendant will appeal should there be an adverse ruling. The point of A.R.S. § 12-1841 is to allow full intervention to ensure that the legislature's point of view is permitted to be heard throughout the case. As the Supreme Court has emphasized, "a full consideration of the State's practical interest may require the involvement of different voices with different perspectives." *Berger v. N. Carolina State Conf. of the NAACP,* 142 S. Ct. 2191 (2022).

> 2. *In re North Dakota Legislative Assembly* contradicts, not supports, the district court's order.

Nor does *In re North Dakota Legislative Assembly,* 70 F.4th 460 (8th Cir. 2023) address waiver of the legislative privilege by intervention. As Plaintiffs admit, *North Dakota* did not involve legislative intervenors. Opp. at 8.

More importantly, the Eighth Circuit *granted* a writ of mandamus, holding that the legislative privilege protected documents and testimony from state legislators and their aides who had been subpoenaed. As the Eighth Circuit held, "Mandamus is an appropriate remedy where a claim of privilege is erroneously rejected during discovery, because the party claiming privilege has no other adequate means to attain relief, and the enforcement of the discovery order would destroy the privilege." 70 F.4th at 462. Not surprisingly, the Opposition doesn't mention that holding.

And as for the one legislator, Jones, for whom the *North Dakota* court declined to grant mandamus relief, that was because he "waived his legislative

privilege by testifying at a preliminary injunction hearing in another case concerning redistricting legislation" and he did not "discuss or dispute the district court's conclusion of waiver" in his petition. *Id.* at 465. In contrast, the Speaker and the President have not testified about the Voting Laws, and they don't intend to.

Nor does the Opposition deal with the main point of the *North Dakota* case, which is that the Eighth Circuit vacated a district court discovery order which would have allowed the production of information protected by the legislative privilege, citing the "ordinary rule that inquiry into legislative conduct is strictly barred by the privilege." *Id.* at 464-65.

These holdings certainly don't help non-U.S. Plaintiffs.

3. The district court clearly erred in holding that the Legislators "put their own motives" at issue.

Not only do no cases *support* the district court's ruling, courts have repeatedly rejected the faulty premise on which the district court's ruling rests: the premise that one can prove the intent of a legislature in adopting a law by showing the personal motives of individual legislators who voted for it.

This Court rejected that premise in the *Foley* case discussed above, as well as *Lee v. City of Los Angeles,* 908 F.3d 1175 (9th Cir. 2018). Remarkably, the Opposition fails to discuss those cases. Non-U.S. Plaintiffs don't try and distinguish the cases or narrow them in any way. By failing to discuss these key precedents at all, Plaintiffs have essentially conceded their applicability here.

For example, in *Lee*, the Court concluded "that plaintiffs are generally barred from deposing local legislators, even in 'extraordinary circumstances.'" 908 F.3d at 1187-88 (affirming order barring the depositions of redistricting officials because they were subject to the legislative privilege); *cf. In re Kelly,* 841 F.2d 908 (9th Cir. 1988) ("Stray comments by individual legislators, not otherwise supported by statutory language or committee reports, cannot be attributed to the full body that voted on the bill. The opposite inference is far more likely.").

Moreover, as discussed in the Petition, the Court's decisions in *Foley* and *Lee* follow an unbroken line of cases going back to the 1810 *Fletcher v. Peck* case, 8 Cranch 87, 3 L.3d. 162, in which courts have again and again held, in essence, that it was "not consonant with our scheme of government for a court to inquire into the motives of legislators . . . ." *Tenney v. Brandhove,* 341 U.S. 367, 377 (1951).

The Opposition completely ignores this statement from *Tenney,* and also ignores the Supreme Court's teaching in *Village of Arlington Heights v. Metropolitan Hosing Development Corp*., 429 U.S. 252 (1977). In *Arlington Heights,* a real estate developer sued the village, arguing that a zoning decision was racially discriminatory. The district court disagreed and entered judgment for the village. Among other things, Plaintiff complained that the district court wrongly "forbade questioning Board members about their motivation at the time they cast their votes." 429 U.S. at 270, n. 20.

In affirming the district court, the Supreme Court explained that "ever since *Fletcher v. Peck*" the Court had recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," so that "[p]lacing a decisionmaker on the stand" is "usually to be avoided." *Id.* at 268, n. 18. In dicta, the court suggested that only in "some extraordinary instances" might members of the decisionmaking body "be called to the stand at trial to testify concerning the purpose of the official action," although "even then such testimony frequently will be barred by privilege." *Id.* at 268.

The Supreme Court did not find such "extraordinary circumstances" in *Arlington Heights.* Moreover, we know of no precedential case where a court has found that extraordinary circumstances justified questioning individual legislators to prove the intent of the legislature as a body. Certainly, the Opposition cites no such case.

Indeed, the Supreme Court has recently rejected use of a "cat's paw" theory of imputing a legislator's allegedly improper motives onto other members:

> The "cat's paw" theory has no application to legislative bodies. . . . [T]he legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents. Under our form of government, legislators have a duty to exercise their judgment and to represent their constituents. It is insulting to suggest that they are mere dupes or tools.

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021).

In sum, the district court plainly erred in finding that, by intervening and denying that the legislature passed the Voting Laws with discriminatory intent, the Legislators put their own motives at issue. They didn't.

Curiously, the non-U.S. Plaintiffs also try to argue that the discovery they seek is "largely *not*" about the Legislators' personal motives for supporting the Voting Laws. Opp. at 18. Yet it is precisely that topic—*and only that topic*—as to which the district court found the Legislators had waived the legislative privilege. We note the following from the district court's discovery order (all emphases added):

- "Plaintiffs argue that the Legislators have waived their legislative privilege by voluntarily intervening in this lawsuit and *putting their intent at issue*." Doc. 535 at 2:27-28.

- "The Legislators also specifically *put their own motives for passing the Voting Laws at issue* when denying Plaintiff' allegations that the Arizona Legislature enacted the Voting Laws with discriminatory intent." *Id.* at 3:25-27.

- "[The court] finds that the Speaker and President each waived their privilege by intervening to 'fully defend' the Voting Laws and *putting their motives at issue*." *Id.* at 4:26-28.

- "The Speaker and the President have waived their legislative privilege as to information *about their motives for the Voting Laws*." *Id.* at 9:4-5.

As these quotations show, the only legislative privilege the Legislators waived (according to the district court) related to *their individual motives* for approving the Voting Laws. Indeed, the district court held that, to the extent the Plaintiffs were seeking "information held by other members of the Arizona Legislature, it remains protected by the legislative privilege." Doc. 535 at 6:6-9. In addition, the Legislators are not competent under Fed. R. Evid. 602 to testify about another legislator's motives.

> 4. The district court clearly erred by failing to evaluate whether the non-U.S. Plaintiffs were deprived of "vital" information to prove the legislature's discriminatory intent.

The district court also clearly erred by failing to cite or evaluate the established test for an implied waiver of a privilege.

An implied waiver is based on what courts sometimes call "the fairness principle," or the notion that a privilege—meant as a shield—can't also be used as a sword. *E.g. Bittaker,* 331 F.3d at 719 (dealing with waiver of the attorney-client privilege). In "practical terms," this means that parties in litigation may not "abuse the privilege" by asserting claims the opposing party "can't adequately dispute unless it has access to the privileged materials." *Id.* "In other words, a party cannot

partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proc.*, 219 F.3d 175, 182–83 (2d Cir. 2000). The Legislators have not done either – they have not partially disclosed privileged communications nor have they relied on privileged communications to support their defenses.

A court assessing implied waiver "must evaluate 'whether allowing the privilege would deny the opposing party access to information vital to its defense.'" *Bittaker,* 331 F.3d at 720 (quoting *United Sates v. Amlani,* 169 F.3d 1189, 1195 (9th Cir. 1999)); *see also Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (finding no waiver of attorney-client privilege where party asserted defense on "objective terms apart from advice of counsel").

The district court's discovery order fails to assess whether access to the Legislator's "motives for the Voting Laws" (Doc. 535 at 9:4-5) was "vital" to plaintiffs' case. And the case law cited above and in the Petition shows that the Legislators' personal motives for supporting the Voting Laws are *not even relevant* to proving discriminatory intent of the legislature itself—let alone "vital" to such proof.

Indeed, if the Legislators' individual testimony was "vital" to prove the intent of the legislature, plaintiffs surely would have sought it long before the Legislators

intervened. But they didn't. Nor have they sought such testimony from the primary drafters of the Voting Laws. Evidently, Plaintiffs do not view such testimony as vital to their case.

The Opposition claims in strong terms that allowing intervention without a concomitant waiver of the legislative privilege would be "grossly unfair." Opp. at 2. But the Opposition never explains *why* it would be unfair in the least, or why plaintiffs would be unfairly prejudiced.

It is undisputed that, in presenting their case regarding legislative intent, the Legislators have not, and will not, offer any testimony of their own. Not will the Legislators rely upon any materials protected by the legislative privilege. Because the Legislators are not relying upon privileged materials to support their defense, there is no unfairness to Plaintiffs.[3] Accordingly, there was no implied waiver by the Legislators.

### C.  The district court's order raises an issue of first impression.

As to the fifth *Bauman* factor—whether there is an issue of first impression— the Opposition suggests that the existing law is that "legislators' testimony can sometimes be warranted, subject to any privileges." Opp. at 26. Hence, the Opposition reasons, it is only an issue of fact whether the conditions warrant such

---

[3] Conversely, last week, Plaintiffs asked the district court to bar the Legislators from presenting any evidence or argument at trial based upon this same unfairness argument. *See* Doc. 566. The district court has not yet ruled on their motion in limine.

testimony. But neither *Arlington Heights* nor *Foley* held that the testimony of legislators *is* sometimes warranted. They only suggested—*in dicta*—that in some "extraordinary circumstances" members of the legislature "might" be called to testify. The Opposition cites no case where a court has *held* that, given some specific set of extraordinary circumstances, it was proper to permit depositions or other testimony of individual legislators to prove legislative intent.

## II.   Non-U.S. Plaintiffs' Miscellaneous Arguments Are Not Well-Taken.

Non-U.S. Plaintiffs' Opposition mischaracterizes the Legislators' intervention and participation in this case. To begin with, Plaintiffs never opposed permissive intervention by the Legislators or argued that intervention was untimely. Doc. 354, 355. They therefore waived any challenge to that intervention and the Court shouldn't permit them to use the briefing on this petition to raise such arguments, including timeliness or the applicability of A.R.S. § 12-1841 to their intervention in a federal court action.

In any event, the Legislators timely intervened and have consistently taken the position that an individual legislator's motive is not relevant to collective intent.

### A.   <u>The Legislators Timely Intervened and Have Participated in Discovery.</u>

In claiming that Legislators "engaged in delay tactics, and "waited over a year to intervene" in the case (Opp. at 4), the Opposition misleads the Court. Here are the facts:

Because of an early motion to dismiss filed by the State that the district court didn't rule on until February 2023 (Doc. 34), very little happened in the case prior to that ruling. The State and RNC didn't file answers to Plaintiffs' eight complaints until March 2023, after the motion to dismiss was denied. *See* Docs. 317-329.

By then, new Attorney General Kris Mayes, a Democrat, had been elected (taking office in January 2023), and in March 2023 her office announced it would soon issue new legal positions with respect to the lawsuit that differed from those positions taken by the State in its motion to dismiss. *See* Doc. 348 at 6. So shortly thereafter, on April 4, 2023, the Legislators moved to intervene under A.R.S. § 12-1841. And as noted, Plaintiffs didn't oppose that motion. *See* Doc. 304; Doc. 348 at 6; 354, 355. That hardly amounts to "delay tactics" or waiting "over a year."

With respect to discovery, undersigned counsel reached out to begin the meet-and-confer process a few days after receiving Non-U.S. Plaintiffs' discovery requests. Counsel participated in multiple meetings regarding the requests and eventually agreed upon search terms, as well as a short extension of the Legislators' response deadline as a professional courtesy. *See* Doc. 500-1 Ex. C, D. The Legislators ran the search terms, reviewed the results, and ultimately produced over 90,000 pages of documents, as well as a comprehensive privilege log of documents withheld on legislative privilege grounds. *See* Doc. 499 at 2. The Legislators also responded to Plaintiffs' non-uniform interrogatories. *See* Doc. 499-2. It is

undisputed that the only discovery that Plaintiffs have not received from the Legislators is evidence covered by the legislative privilege. Opp. p. 32.

**B.     The District Court Did Not Address Plaintiffs' Newly Raised Argument Regarding the Five-Factor Balancing Test.**

During the meet-and-confers, non-U.S. Plaintiffs asserted that the Legislators had waived the privilege and argued that a 30(b)(6) deposition of the Arizona House and Senate on a variety of privileged topics, including legislators' communications with respect to the bills, was appropriate because of the Legislators' intervention. Doc. 500-1 Ex. C, Ex. F.[4]

The Legislators did not agree, and the parties brought the waiver and 30(b)(6) deposition issues to the district court, who then ordered simultaneous briefing. Non-U.S. Plaintiffs' brief—filed an hour *after* the Legislators' brief—asserted for the first time that the legislative privilege should not apply under a five-factor balancing test. Doc. 500.

The district court *declined* to reach Plaintiffs' argument regarding application of a five-factor balancing test with respect to the legislative privilege and did not decide whether that argument was timely raised. *See* Doc. 535 at 5 n. 1; *see also* Doc. 506 (asking for leave to respond to Plaintiffs' simultaneous brief "to the extent

---

[4] The district court agreed with Legislators that the 30(b)(6) deposition on the topics in Plaintiffs' draft notice (cited on p. 18 of the Opposition) sought information protected by the legislative privilege. Doc. 535 at 8:2-19.

that the Court will consider" the newly-raised argument); Doc. 517 (denying motion for leave to respond). The district court's discovery order did address the two timely issues: waiver and the 30(b)(6) deposition. *See* Doc. 535. Under these circumstances, there was no waiver of an argument the district court did not reach.[5]

In any event, neither the Ninth Circuit nor the Supreme Court have approved the use of the five-factor balancing test cited by non-U.S. Plaintiffs. Rather, as discussed in the Petition, this Court, following *Arlington Heights*, has "likewise concluded that plaintiffs are generally barred from deposing local legislators, even in 'extraordinary circumstances.'" *Lee,* 908 F.3d at 1187-88. Other recent circuit decisions have not applied Plaintiffs' proposed five-factor balancing test. *See In re North Dakota Legislative Assembly*, 70 F.4th at 464-65; *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 238-39 (5th Cir. 2023) (holding case did not present "extraordinary circumstances").

Moreover, the Legislators' Petition showed the lack of relevance of the discovery sought, the availability of other evidence regarding intent (including the Legislators' production of over 90,000 pages and the publicly available legislative history, such as agendas, minutes, and videos of legislative proceedings), and the need to preserve the purposes behind the legislative privilege (including avoiding

---

[5] These circumstances also distinguish *In re N. Dakota Legislative Assembly*, in which the trial court found a waiver, but the legislator did not address that holding in the petition. 70 F.4th at 465.

interference with the legislative process). In addition, the Legislators, as state officials, have sought to uphold the validity of the Voting Laws (the State has also defended against most of Plaintiffs' challenges), and that weighs against disclosure. *See Puente Arizona v. Arpaio*, 314 F.R.D. 664, 672 (D. Ariz. 2016).

The mere fact that this case involves election laws does not itself overcome the legislative privilege. *Lee* involved allegations of racial motivations in redistricting, yet this Court found that did not justify intrusion into the legislative process. 908 F.3d at 1188 (refusing to create a "categorical exception" to the legislative privilege for constitutional claims that directly implicate intent because such a decision would "render the privilege of little value"). The Fifth Circuit held likewise in a case involving voter registration laws. *Abbott*, 68 F.4th at 238.

In sum, non-U.S. Plaintiffs have not shown that the facts of this case constitute exceptional circumstances meriting judicial intervention into the Legislators' subjective motives and intent.

### C. The Legislators Have Consistently Asserted that They Could Not Offer Testimony Relevant to the Legislature's Collective Intent.

Plaintiffs' other waiver argument also fails because the Legislators have consistently taken the position that an individual legislator's motive is not relevant to collective legislative intent. See Doc. 500-1, Ex. C at 50 ("The Speaker and the President do not believe that any single legislator's motive for his or her votes on the challenged bills is relevant to this case."); Doc. 499 at 10 (arguing that because

individual legislators have differing motives, "the language of the bill itself and the public legislative history are the best methods to determine the collective legislative intent" and citing *Va. Uranium, Inc. v. Warren*, ___ U.S. ___, 139 S. Ct. 1894, 1907-08 (2019)); Doc. 499-2 at 5-7 (stating in response to interrogatory regarding the "purposes" of the Voting Laws that Legislators did not respond on behalf of the "Legislature as a whole" or any other legislators and quoting from the legislative fact sheets). That the Legislators did not withhold responsive non-privileged documents from production on relevance grounds is not a waiver as to the lack of relevance of the privileged documents or the Legislators' depositions.[6]

### D.  The Legislators' Statutory Authority to Intervene Applies in Federal Court as Well as State Court.

As noted in the Legislators' motion to intervene (Doc. 348 at 9) and not challenged in Plaintiffs' response to that motion (Doc. 354), another district court has recently rejected Plaintiffs' new argument that A.R.S. § 12-1841 only applies to state court actions: "[N]othing in the language of § 12-1841 imposes such a limitation. To the contrary, § 12-1841(A) says it applies 'in *any* proceeding in which a state statute, ordinance, franchise or rule is alleged to be unconstitutional[.]' (Emphasis added.) Any means any." *Isaacson v. Mayes,* No. CV-21-01417-PHX-DLR, 2023 WL 2403519 (D. Ariz. Mar. 8, 2023).

---

[6] Plaintiffs also cannot rely upon their own letter to establish a waiver by the Legislators. *See* Opp. p. 16 (citing Doc. 500-1 Ex. C).

## CONCLUSION

We ask the Court to issue a Writ of Mandamus reversing the challenged part of the district court's discovery order, and directing the district court to enter a protective order as to the compelled discovery.

Dated: October 25, 2023

**GALLAGHER & KENNEDY, P.A.**

By: */s/ Hannah H. Porter*
     Kevin E. O'Malley
     Hannah H. Porter
     Mark C. Dangerfield
     GALLAGHER & KENNEDY, P.A.
     2575 East Camelback Road
     Phoenix, Arizona 85016-9225
     Attorneys for Petitioners

## CERTIFICATE OF COMPLIANCE

From our research, and as confirmed by an October 20, 2023 email from Ninth Circuit Operations ("Questions CA09Operation"), no rule within either the Federal Rules of Appellate Procedure or the Ninth Circuit Rules addresses the page or word limits for a reply in support of a petition for mandamus. The Ninth Circuit Operations email thus referenced Circuit Rule 21-2(c) (petitions and answers (if ordered) may not exceed 30 pages), along with Fed. R. App. P. 21(d) (stating that a "paper produced using a computer must not exceed 7,800 words").

This reply, excluding the parts of the document exempted by Fed. R. App. P. 21(a)(2)(C) and Fed. R. App. P. 32(f), contains 4,870 words and is 21 pages.

This reply in support of petition for writ of mandamus complies with the form requirements of Fed. R. App. P. 27(d), the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.


Dated: October 25, 2023

GALLAGHER & KENNEDY, P.A.

By:  */s/ Hannah H. Porter*
　　　Kevin E. O'Malley
　　　Hannah H. Porter
　　　Mark C. Dangerfield
　　　GALLAGHER & KENNEDY, P.A.
　　　2575 East Camelback Road
　　　Phoenix, Arizona 85016-9225
　　　Attorneys for Petitioners

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the Reply in Support of Petition for Writ of Mandamus with the clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 25, 2023.

Dated: October 25, 2023

GALLAGHER & KENNEDY, P.A.

By: */s/ Hannah H. Porter*
Kevin E. O'Malley
Hannah H. Porter
Mark C. Dangerfield
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Attorneys for Petitioners

24